**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LABORERS' PENSION FUND and** | ) | |
| **LABORERS' WELFARE FUND OF THE** | ) | |
| **HEALTH AND WELFARE DEPARTMENT** | ) | |
| **OF THE CONSTRUCTION AND GENERAL** | ) | |
| **LABORERS' DISTRICT COUNCIL OF** | ) | |
| **CHICAGO AND VICINITY, THE CHICAGO** | ) | |
| **LABORERS' DISTRICT COUNCIL RETIREE** | ) | |
| **HEALTH AND WELFARE FUND and** | ) | |
| **CATHERINE WENSKUS,** | ) | |
| **Administrator of the Funds,** | ) | **Case No. 18-cv-6241** |
| | ) | |
| **and** | ) | |
| | ) | |
| **FOX VALLEY LABORERS' HEALTH AND** | ) | |
| **WELFARE FUND and FOX VALLEY** | ) | |
| **LABORERS' PENSION FUND and** | ) | |
| **PATRICIA M. SHALES, Administrator of the** | ) | |
| **Funds** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| | ) | |
| **DE GRAF CONCRETE CONSTRUCTION,** | ) | |
| **INC., an Illinois Corporation and** | ) | |
| **MICHAEL PIRRON, individually** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and

Welfare Department of the Construction and General Laborers' District Council of Chicago and

Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund, and Catherine

Wenskus ,Administrator of the Funds (hereinafter collectively " Chicago Laborers' Funds"), Fox

Valley Laborers' Health and Welfare Fund, Fox Valley Laborers' Pension Fund and Patricia M.

Shales, Administrator of the Funds (hereinafter collectively "Fox Valley Laborers' Funds")  by

their attorneys, Patrick T. Wallace, Amy N. Carollo, G. Ryan Liska and Katherine C. Mosenson for their Complaint against De Graf Concrete Construction Inc. and Michael Pirron, individually:

## FACTS COMMON TO ALL COUNTS

1.      Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2.      Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3.      The Chicago Laborers' Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4.      Plaintiff Catherine Wenskus is the Administrator of the Chicago Laborers' Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Chicago Laborers' Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Wenskus is a fiduciary of the Chicago Laborers' Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

2

5.     Plaintiff Patricia Shales ("Shales") is the Administrator of the Fox Valley Laborers' Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Fox Valley Funds and to the Construction and General District Council of Chicago and Vicinity Work Dues Fund, and with respect to the collection by the Fox Valley Laborers' Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Jorgensen is a fiduciary of the Fox Valley Laborers' Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

6.     Defendant De Graf Concrete Construction, Inc. (hereinafter "Company") is an Illinois limited liability company that did and does conduct business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

7.     Defendant Michael Pirron ("Pirron") is and was at all time President and owner of the Company.

8.     The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union operates and maintains its office within the District. The Union and Company have been parties to successive collective bargaining agreements, the most recent of which became effective June 1, 2017. ("Agreement"). (A copy of the "short form" Agreement entered into between the Union and Company which Agreement adopts and incorporates Master Agreements between the Union and various employer associations, and also binds Company to the Chicago Laborers' Funds and Fox Valley Laborers' Funds respective Agreements and Declarations of Trust is attached hereto as Exhibit A.)

9.    The Chicago Laborers' Funds and Fox Valley Laborers' Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors Association ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Will Grundy Industry Trust Advancement Fund ("WGITA"), the Illinois Environmental Contractors Association Industry Education Fund ("IECA Fund"), the Illinois Small Pavers Association Fund ("ISPA"), and the Chicago Area Independent Construction Association ("CAICA") to act as an agent in the collection of contributions due to those Funds.

10.    The Agreement and the Chicago Laborers' Funds and Fox Valley Laborers' Funds' respective Agreements and Declarations of Trust obligate Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in which Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Chicago Laborers' Funds and Fox Valley Laborers' Funds respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages and interest.

4

11.     On March 23, 2017, the Company entered into a fifteen (15) month Installment Note ("First Note") to pay past due contributions, liquidated damages, interest and attorney fees resulting from the Company's failure to pay fringe benefit contributions for the months August 2016 and December 2016 through February 2016.   The term of the First Note was May 1, 2017 to July 1, 2018. A true and accurate copy of the First Note is attached as Exhibit B.

12.     Contemporaneously with the signing of the First Note, Pirron entered into a Guaranty of Payment Indemnification ("Guaranty") personally guaranteeing: 1) the amounts due on the Note;  2) benefit contributions and dues that are due at the time the First Note was entered into; and 3)  benefit contributions and dues that became due while obligations under the note remain unsatisfied.   In addition, Pirron guaranteed payment of interest, liquidated damages, accumulative liquidated damages, audit costs and attorneys' fees and costs resulting from the Company's failure to timely remit contributions and dues reports and payments.   A true and accurate copy of the Guaranty is attached hereto as Exhibit C.

13.     During the term of the First Note the Company defaulted as a result of failing to timely remit and pay its monthly fringe benefit and dues reports.   The Chicago Laborers' Funds, the Company and Pirron agreed to enter into a second note arrangement whereby the balance of the March 2017 Note and fringe benefit contributions that became due after the First Note was executed would be captured in a new installment note agreement.

14.     On January 23, 2018 the Company entered into a second Installment Note ("Second Note") to pay amounts due on the First Note in addition to contributions that became due during the term of the First Note.  A true and accurate copy of the Second Note is attached as Exhibit D.

5

15.     Contemporaneously with the signing of the Second Note, Pirron entered into a Guaranty of Payment Indemnification ("Guaranty") personally guaranteeing: 1) the amounts due on the Note; 2) benefit contributions and dues that are due at the time the Second Note was entered into; and 3) benefit contributions and dues that became due while obligations under the Second Note remain unsatisfied.  In addition, Pirron guaranteed payment of interest, liquidated damages, accumulative liquidated damages, audit costs and attorneys' fees and costs resulting from the Company's failure to timely remit contributions and dues reports and payments.  A true and accurate copy of the Guaranty is attached hereto as Exhibit E.

16.     During the term of the First and Second Notes, the Company was assessed liquidated damages totaling $83,036.13 as a result of the late payment of its Chicago Laborers Funds' March 2017, April 2017, June 2017, July 2017, September 2017, October 2017, March 2018 and April 2018 monthly reports.  The Agreement, the Funds' Respective Agreements and Declarations of Trust, Note and Guaranty provide liquidated damages which will be assessed at twenty percent (20%) of the report amount.

17.     The Agreement and the Chicago and Fox Valley Laborers' Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

18.     Upon request the Company submitted its books and records to the Chicago and Fox Valley Laborers' Funds for an audit covering the period April 1, 2015 through June 30, 2018.

## COUNT I

### (Failure To Pay Employee Benefit Contributions to Chicago Laborers' Funds as Revealed by an Audit)

19.     Chicago Laborers' Funds re-allege and incorporate the allegations contained in paragraphs 1-18 of this Complaint.

20.     Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company performed covered work during the audit period of April 1, 2015 through June 30, 2018 but failed to pay the Chicago Laborers' Funds all required contributions.  According to the Chicago Laborers' Funds Audit the Company:

(a)     failed to report and pay contributions in the amount of $143,926.34 owed to Chicago Laborers' Pension Fund  for the audit period April 1, 2015 through June 30, 2018, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b)     failed to report and pay contributions in the amount of $117,917.65 owed to Chicago Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the audit period of April 1, 2015 through June 30, 2018, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c)     failed to report and pay contributions in the amount of $53,077.51 owed to Laborers' District Council Retiree Health and Welfare Fund of the Construction and General Laborers' District Council of Chicago and Vicinity for the audit period of April 1, 2015 through

June 30, 2018, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(d)     failed to report and pay contributions in the amount of $6,611.65 owed Laborers' Training Fund for the audit period of April 1, 2015 through June 30, 2018, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

(e)     failed to report and pay contributions in the amount of $4,194.45 owed to Laborers' District Council Labor Management Committee Cooperative ("LMCC") for the audit period of April 1, 2015 through June 30, 2018, thereby depriving the LMCC of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries;

(f)     failed to report and pay contributions in the amount of $1,727.19 owed to Concrete Contractors Association ("CCA") for the audit period of April 1, 2015 through June 30, 2018, thereby depriving the CCA of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries; and

(g)     failed to report and pay contributions in the amount of $752.38 owed to Laborers' Employers' Cooperation and Education Trust ("LECET") for the audit period of April 1, 2015 through June 30, 2018, thereby depriving the LECET of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries.

21.     A true and accurate copy of the Chicago Laborers' Funds Audit for the period April 1, 2015 through June 30, 2018 is attached as Exhibit F.

22.     By virtue of the Exhibit C and E Guaranties Pirron is personally liable for all Chicago Laborers' Funds audit findings.

23.     The Company and Pirron's failure to submit payment upon an audit to which it submitted its books and records violate Section 515 of ERISA, 29 U.S.C. §1145.

24.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, the Note and Guaranty, the Company and Pirron are liable to the Chicago Laborers' Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions, accumulative liquidated damages on the late paid contributions, audit costs, reasonable attorneys' fees and court costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiff Chicago Laborers' Funds respectfully request that this Court:

a.     enter judgment in sum certain in favor of the Chicago Laborers Funds and against Defendants De Graf Concrete Construction, Inc. and Michael Pirron, individually on the amounts due and owing pursuant to the audit for the period of April 1, 2015 through June 30, 2018 plus interest, liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs;

b.     enter judgment in favor of the Chicago Laborers' Funds and against Defendants De Graf Concrete Construction, Inc. and Michael Pirron, individually in the amount of $83,036.13 as a result of the late payment of its Chicago Laborers Funds' March 2017, April 2017, June 2017, July 2017, September 2017, October 2017, March 2018, April 2018 monthly reports.

    c.      awarding Chicago Laborers Funds' any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure To Pay Employee Benefit Contributions to Fox Valley Laborers' Funds as Revealed by an Audit)

25.    Chicago Laborers' Funds re-allege and incorporate the allegations contained in paragraphs 1-18 of this Complaint.

26.    Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, Company performed covered work during the audit period of April 1, 2015 through June 30, 2018 but failed to pay the Fox Valley Laborers' Funds all required contributions. According to the Fox Valley Laborers' Funds Audit the Company:

(a)    failed to report and pay contributions in the amount of $16,275.60 owed to Fox Valley Laborers' Funds for the audit period April 1, 2015 through June 30, 2018, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b)    failed to report and pay contributions in the amount of $16,978.41 owed to Fox Valley Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the audit period of April 1, 2015 through June 30, 2018, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c)    failed to report and pay contributions in the amount of $616.50 owed Laborers' Training Fund for the audit period of April 1, 2015 through June 30, 2018, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

(d)    failed to report and pay contributions in the amount of $210.89 owed to Laborers' District Council Labor Management Committee Cooperative ("LMCC") for the audit period of April 1, 2015 through June 30, 2018, thereby depriving the LMCC of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries;

(e)    failed to report and pay contributions in the amount of $86.83 owed to Concrete Contractors Association ("CCA") for the audit period of April 1, 2015 through June 30, 2018, thereby depriving the CCA of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries; and

(f)    failed to report and pay contributions in the amount of $99.24 owed to Laborers' Employers' Cooperation and Education Trust ("LECET") for the audit period of April 1, 2015 through June 30, 2018, thereby depriving the LECET of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries.

27.    A true and accurate copy of the Fox Valley Laborers' Funds Audit for the period April 1, 2015 through June 30, 2018 is attached as Exhibit G.

28.    During the audit period, the Company and Pirron were assessed liquidated damages totaling $13,933.68 as a result of Company's late payment of December 2016 through August 2017 monthly fringe benefit reports.

29.    Pursuant to the Exhibit C and E Guaranties, Pirron is personally liable for all Fox Valley Laborers' Funds audit findings.

30.    The Company's and Pirron's failure to submit payment upon an audit to which it submitted its books and records violate Section 515 of ERISA, 29 U.S.C. §1145.

31.    Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, the Note and Guaranty, the Company and Pirron are liable to the Chicago Laborers' Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions and paid late contributions, accumulative liquidated damages, audit costs, reasonable attorneys' fees and court costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiff Fox Valley Laborers' Funds respectfully request that this Court:

a.    enter judgment in sum certain in favor of the Fox Valley Laborers' Funds and against Defendants De Graf Concrete Construction, Inc. and Michael Pirron, individually on the amounts due and owing pursuant to the audit for the period of April 1, 2015 through June 30, 2018 plus interest, liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs;

b.    enter judgment in favor of the Fox Valley Laborers' Funds and against Defendants De Graf Concrete Construction, Inc, and Michael Pirron, individually in the amount of $13,933.68 as a result of the late payment of its Fox Valley Laborers Funds' December 2016 through August 2017 monthly reports.

c.    awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate

## COUNT III

**(Failure To Submit Reports and/or Pay Employee Benefit Contributions to Chicago Laborers and Fox Valley Laborers' Funds)**

32.     Chicago and Fox Valley Laborers' Funds re-allege and incorporate the allegations contained in paragraphs 1-18 of this Complaint.

33.     Notwithstanding the obligations imposed by the Agreement and the Chicago and Fox Valley Funds respective Agreements and Declarations of Trust, the Chicago Funds and Fox Valley Funds the Company has performed covered work during the months of July 2018 forward and has:

(a)     failed to submit reports and/or pay contributions to Chicago and Fox Valley Laborers' Pension Fund for the period of July 2018 forward, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b)     failed to submit reports and contributions to Chicago and Fox Valley Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period of July 2018 forward, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c)     failed to submit reports and/or pay contributions to Chicago Laborers' District Council Retiree Health and Welfare Fund for the period of July 2018 forward, thereby depriving the Retiree Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

13

(d)     failed to submit reports and/or pay contributions to Chicago and Fox Valley Laborers' Training Fund for the period of July 2018 forward, thereby depriving Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the Training Fund benefits of the participants and beneficiaries; and

(e)     failed to report and/or all contributions owed to one or more of the other affiliated funds identified above for the period of July 2018  forward, thereby depriving said fund(s) of contributions income and information needed to administer said fund(s) and jeopardizing the benefits of the participants and beneficiaries;

34.     The Company's actions in failing to submit timely reports and contributions violate section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA.  29 U.S.C. §185.

35.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement, the Funds' respective Trust Agreements, the Note and Guaranty, the Company and Pirron are liable to the Chicago and Fox Valley Laborers' Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions and paid late contributions, reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs Chicago Laborers' Funds and Fox Valley Laborers' Funds respectfully request that this Court:

a.     order Defendant De Graf Concrete Construction, Inc. and Michael Pirron to submit benefit reports and/or contributions to Chicago and Fox Valley Laborers' Funds for the period of July 2018 forward;

b.     entering judgment in sum certain against Defendants De Graf Concrete Construction, Inc. and Michael Pirron, jointly and severely on the amounts due and owing as

14

pleaded in the Complaint, and pursuant to the amounts revealed as owing pursuant to the Fox Valley Laborers' Funds reports and the Chicago Laborers' Funds July 2018 forward reports including contributions, accumulative liquidated damages, audit costs, and attorneys' fees and costs;

      c.    awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT IV

### (Failure To Submit Reports and/or Pay Union Dues Chicago Laborers and Fox Valley Laborers' Funds)

36.    The Funds re-allege paragraphs 1 through 18 of Count I as though.

37.    Pursuant to agreement, the Fox Valley and Chicago Laborers' Funds have been duly designated to serve as collection agents for the Union in that the Fox Valley and Chicago Laborers' Funds have given the authority to collect from employers union dues which should have been or have been deducted from wages of covered employees.

38.    Dues reports and contributions are due by the 10th following the month in which the work was performed. Dues reports and contributions which are not submitted in a timely fashion are assessed liquidated damages.

39.    Notwithstanding the obligations imposed by the Agreement, the Company has performed covered work during the months of July 2018 forward and has failed to withhold and/or report to and forward union dues that were deducted or should have been deducted from the wages of its employees for the period of July 2018 forward, thereby depriving the Union of income and information.

40. The Company's failure to submit timely payments of its July 2018 forward due report under the terms of the Agreement will result in accumulative liquidated damages when paid.

41. Pursuant to the Agreement, Note and Guaranty, the Company and Pirron are liable to the Fox Valley and Chicago Laborers' Funds for the unpaid union dues, as well as liquidated damages, accumulative liquidated damages, audit costs, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court seems appropriate.

WHEREFORE, Plaintiffs Chicago Laborers' Funds Fox Valley Laborers' Funds respectfully request that this Court:

a. enter judgment ordering Defendant De Graf Concrete Construction, Inc., and Michael Pirron to submit dues reports and payments for the time period of July 2018 forward;

b. enter judgment in sum certain in favor of the Plaintiff Fox Valley and Chicago Laborers' Funds against Defendant De Graf Concrete Construction, Inc. and Michael Pirron on the amounts due and owing pursuant to the dues reports and contributions revealed as owing pursuant to the July 2018 forward dues reports to be submitted, including dues, liquidated damages, accumulative liquidated damages in late reports, audit costs, and Plaintiffs' reasonable attorney's fees and costs;

c. awarding Plaintiffs Funds any further legal and equitable relief as the Court deems appropriate.

September 12, 2018

Respectfully submitted,

By: /s/ G. Ryan Liska

G. Ryan Liska
Laborers' Pension and Welfare Funds
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL 60604
(312) 692-1540



HEADQUARTERS

# Construction & General Laborers' District Council of Chicago and Vicinity

Affiliated with the Laborers International Union of North America, A.F. of L. - C.I.O. -
6121 WEST DIVERSEY AVENUE - CHICAGO, ILLINOIS 60639 - PHONE: 773-237-7537 - FAX: 773-237-3417

LOCALS 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092

1014

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between DeGraF Concrete Construction Inc., herein called the "EMPLOYER", and the CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, herein called the "UNION", representing and encompassing Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092 and encompassing the geographical areas of the counties of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone, in the State of Illinois, together with any other locals which may come within the jurisdiction of the UNION, that:

1. EMPLOYER, in response to the UNION'S claim that it represents an uncoerced majority of such EMPLOYERS' laborer employees, acknowledges and agrees that there is no good faith doubt that the UNION has been authorized to and in fact does represent such majority of laborer employees. Therefore, the UNION is hereby recognized as the sole and exclusive collective bargaining representative for the bargaining unit [illegible] employed in the bargaining unit with respect to wages, hours of work and other terms and conditions of employment in [illegible] Section 9 of the National Labor Relations Act [illegible] the need for a Board certified election.

2. The EMPLOYER affirms and adopts the Collective Bargaining Agreements between the UNION and the Builders Association of Chicago and Vicinity, the Illinois Road Builders Association, the Underground Contractors Association, the Mason Contractors Association of Greater Chicago, the Concrete Contractors Association of Greater Chicago, the G.C.C.A.I./C.A.W.C.C., the Lake County Contractors Association, the Contractors Association of Will and Grundy Counties, the Fox Valley General Contractors Association, the Chicago Demolition Contractors' Association, the Illinois Environmental Contractors Association, and all other Associations with which the District Council or any of its affiliated local unions has a duly negotiated agreement, and re-establishes all agreements from June 1, 1978 together with all amendments [illegible]. Where no current Association agreement is negotiated, the terms of the most recent expired agreement are incorporated herein with all terms, conditions and dates extended for the duration hereof, until a current agreement exists that shall be incorporated retroactively herein. It is further agreed that where a contractor works in the jurisdiction of any local UNION, then the Association agreement covering the local UNION is herein specifically incorporated in this agreement and shall supersede the standard District Council agreement in the case of any conflict between the District Council agreement and the local Association agreement. Nothing herein shall limit the jurisdiction of this Agreement to less than that provided in this Agreement.

3. The EMPLOYER agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, the LABORERS' PENSION FUND, the CONSTRUCTION AND GENERAL LABORERS DISTRICT COUNCIL OF CHICAGO AND VICINITY TRAINING TRUST FUND, the CHICAGO AREA LABORERS-EMPLOYERS COOPERATION EDUCATION TRUST ("LECET"), and to all other designated Union-affiliated benefit funds, and to become bound by and be considered a party to the Agreements and Declarations of Trust creating said Trust Funds as if it had signed the original copies of the Trust Instruments and amendments thereto. The EMPLOYER ratifies and confirms the appointment of the EMPLOYER Trustees who shall, together with their successor Trustees, designated in the manner provided in said Agreements and Declaration of Trusts and jointly with an equal number of Trustees appointed by the UNION, carry out the terms and conditions of the Trust Instruments.

The EMPLOYER further affirms and re-establishes that all prior contributions paid to the Welfare, Pension, Training and LECET Funds were made by duly authorized agents of the EMPLOYER at all proper rates, for the appropriate periods of time, and that by making said prior contributions the EMPLOYER evidences the intent to be bound by the terms of the Trust Agreements and Collective Bargaining Agreements which were operative at the time the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the EMPLOYER to the applicable agreements.

4. Employees covered by this Working Agreement shall retain all the work traditionally performed by members of the UNION. The EMPLOYER agrees that it will not cause any such traditionally performed work to be done at a construction site by employees other than those covered by this Memorandum of Agreement, except with the prior written consent of the UNION. Any EMPLOYER, whether acting as a contractor, general manager or developer, who contracts out or sublets any of the work coming within the jurisdiction of the UNION, shall assume the obligations of any such subcontractor for prompt payment of employees' wages and other benefits, including reasonable attorneys' fees incurred in enforcing the provisions hereof. Notwithstanding any agreement to the contrary, the EMPLOYER'S violation of any provision of this paragraph will give the UNION the right to take any other lawful action, including all remedies at law or equity.

5. In the event of any change in the ownership, management or operation of the EMPLOYER'S business by sale or otherwise, it is agreed that as a condition of such transfer or change that the new owner and management shall be fully bound by the terms and conditions of this Agreement. This Agreement is applicable to all successors and transferees of the EMPLOYER, whether corporate or otherwise. The EMPLOYER shall provide ten (10) days prior notice to the Union of the sale or transfer.

6. The negotiated wage and fringe benefit contribution rates in the various Collective Bargaining Agreements are as follows: [illegible]

| | |
|---|---|
| June 1, 1998 to May 31, 1999 | $[illegible] Per Hour Wages<br>$ 3.27 Per Hour Health and Welfare Fund<br>$ 2.05 Per Hour Pension Fund<br>$ .10 Per Hour Training Fund (plus additional amounts in Association agreement)<br>$ .02 Per Hour MCIUF (if applicable in Association agreement)<br>$ .02 Per Hour LECET (to be deducted from MCIUF if LECET contribution is not provided in Association agreement)<br>$ .01 Per Hour Chicagoland Safety Council (if applicable)<br>In addition, the Employer shall pay other amounts if provided in appropriate Association agreements for industry funds. |
| June 1, 1999 to May 31, 2000 | $ 1.25 Per Hour Increase for the year June 1, 1999 through May 31, 2000 to be allocated between wages and fringe benefits by the Union in its sole discretion. Welfare, Pension, Training and LECET Funds contributions to remain the same unless additional sums are allocated. |
| June 1, 2000 to May 31, 2001 | $ 1.35 Per Hour Increase for the year June 1, 2000 through May 31, 2001, to be allocated between wages and fringe benefits by the Union in its sole discretion. Welfare, Pension, Training and LECET Fund contributions remain the same unless additional sums are allocated. |

All additional wage rates, dues checkoff, and fringe benefits that are negotiated or become effective after May 31, 2001, shall be incorporated in this Memorandum of Agreement.

7. Effective June 1, 1998, all EMPLOYERS covered by this Memorandum of Agreement incorporating the various Collective Bargaining Agreements shall deduct from the wages of employees covered by the said contract, uniform working dues in the amount of 1.5% of gross wages, or as determined by the UNION, and shall remit monthly to the UNION office designated to the EMPLOYER by the District Council the sums so deducted, together with an accurate list of employees from whose wages and dues were deducted and the amounts applicable to each employee, not later than the 10th day of the month following the month for which said deductions were made.

8. It is the intention of the parties that such deductions shall comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended and such deductions be made only pursuant to written assignments from each employee on whose account such deductions are made, which assignment shall not be irrevocable for a period of more than one year or beyond the termination date of the Memorandum of Agreement, whichever occurs sooner.

9. This Agreement shall remain in full force and effect through May 31, 2001 (unless an applicable Association agreement is of longer duration) and shall continue thereafter unless there has been given written notice, by registered or certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such notice the EMPLOYER and the UNION agree to be bound by the new area-wide negotiated contracts with the various Associations incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated contracts.

10. The EMPLOYER acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The EMPLOYER further acknowledges receipt of a copy of the complete Joint Working Agreement. Upon request of the UNION, the EMPLOYER shall execute another agreement that reflects the final contract settlements incorporated herein.

Dated July 29, 1998
(Month / Day) (Year)

DeGraF Concrete Construction, Inc
(Employer)

ACCEPTED:
Laborers' Local Union No. ________

By: ________

By: Michael Pirron - Vice - President
(Print Name and Title)

[signature]
(Signature)

CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: [signature]
Robert E. Bloch, Trustee

300 Alderman
(Address)

Wheeling, Illinois 60090
(City, State and Zip Code)

For Office Use Only: ________

847-541-2140
(Telephone)

EXHIBIT
A

FUND

## INSTALLMENT NOTE

This Installment Note ("Note") is made between the Laborers' Pension Fund ("Pension Fund"), the Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and the Retiree Health and Welfare Fund ("Welfare Funds" or collectively the "Funds"), the parties of the first part, and DeGraf Concrete Construction, Inc. (the "Company"), the parties of the second part.

WHEREAS, the Company has at all relevant times been party to a collective bargaining agreement ("CBA") with Local 118 the Construction and General Laborers' District Council of Chicago and Vicinity, whereunder it is obligated to make certain contributions to the above-named Funds, as well as to the Training Fund, on behalf of its covered employees, and to submit payment of all employee union dues;

WHEREAS, the Company has failed to timely pay certain contributions owed to the Funds for the period of August 2016, December 2016 through February 2017,

WHEREAS, the Company has failed to remit all employee union dues to the Funds, as the designated collection agent for the Construction and General Laborers' District Council of Chicago and Vicinity, for the period of August 2016, December 2016 through February 2017,

WHEREAS, the Company desires to pay all delinquencies owed to the Funds, to pay all union dues owed to the Construction and General Laborers' District Council of Chicago and Vicinity, together with liquidated damages, and interest, as set forth below and further desires to remain current in its obligation to pay contributions to the Funds.

THE PARTIES HEREBY AGREE as follows:

1. The Company will pay $166,244.13 to the Health and Welfare Fund (comprised of $136,656.14 in delinquent contributions, $18,582.26 in liquidated damages, $449.13 in attorney's fees and costs and $10,556.60 in interest) (based on an interest rate of 12%). The Company will pay $70,773.18 to the Retiree Health and Welfare Fund (comprised of $58,195.26 in delinquent contributions, $7,913.29 in liquidated damages, $449.13 in attorney's fees and costs and $4,215.50 in interest). The Company will also pay $193,185.18 to the Pension Fund (comprised of $158,428.02 in delinquent contributions, $21,542.76 in liquidated damages, $898.24 in attorney's fees and costs and $12,316.16 in interest). All of these amounts shall be paid according to the schedule described below in paragraphs 4 and 5.

2. The Company will also pay $7,531.15 to the Training Fund (comprised of $6,846.50 in delinquent contributions and $684.65 in liquidated damages), $830.24 to the CCA Fund (comprised of $754.76 in delinquent contributions and $75.48 in liquidated damages), $726.47 to the LECET Fund (comprised of $660.43 in delinquent contributions and $66.04 in liquidated damages), $1,764.27 to the LDCMC Fund (comprised of $1,603.88 in delinquent contributions and $160.39 in liquidated damages) and $18,576.93 in union dues (comprised of $14,529.80 in delinquent contributions and $4,047.13 in liquidated damages). These delinquent amounts shall be paid in their entirety at the time the Note is signed along with the amounts due in paragraph 4.

3. The Company will also pay the Funds or the sum of $1,796.50 representing attorney fees and costs incurred by the Funds in collecting the delinquent contributions. This amount is split between the Welfare, Retiree Welfare and Pension Funds as described in paragraph 1 above.

4. Simultaneously with the execution of this Note, the Company will pay $50,000.00 as the down payment.

5. For fifteen (15) consecutive months commencing on May 1, 2017 and ending on July 1, 2018, the Company will pay $10,165.81 per month to the Health and Welfare Fund, $4,261.08 to the Retiree Health and Welfare Fund and $12,421.88 per month to the Pension Fund.

6. The Company will remit all payments to the Funds' Administrative Offices, which are located at 11465 Cermak Road, Westchester, Illinois 60154.

7. The Company understands and agrees that this Installment Note is based on reports submitted by the Company to the Funds and that the Funds reserve the right to conduct an audit, in accordance with the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, to determine benefit contribution compliance for the time period covered herein and further reserve the right to collect any unpaid contributions, union dues, interest, liquidated damages, and audit costs as shown on said audit.



EXHIBIT
B

8.  Payments made pursuant to this Installment Note shall be considered "contributions" as defined under the terms of the CBA and the Funds' respective Agreements and Declarations of Trust. If the contributions are not paid by the 10th day following the date on which payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Funds' respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages. Further, in the event the Company fails to timely make any payments described in this Note. All amounts described in paragraph 1 herein shall immediately become due on the 10th day following the date on which payment should have been received by the Fund's under the terms of this Note. In such event the Company further agrees to pay all attorneys' fees and costs incurred by the Funds in any action to enforce any part of this Note.

9.  This Installment Note is conditioned on the Company staying current on its obligations to the Funds and District Council under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust. In the event that the Company fails to maintain its obligations under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, including, but no limited to, its obligations to submit timely contribution and dues reports and to make timely contribution and dues payments by the tenth day following the month in which laborers' work was performed, then the Funds shall have the right to accelerate and collect all amounts due under this Installment Note, plus payment of all attorneys' fees and costs incurred by the Funds in any action to accelerate this Installment Note.

10. The Parties acknowledge and agree that any payments to the Union provided for in this Agreement fully comport with 29 U.S.C. § 186(c)(2) and that they involve the compromise, adjustment, settlement or release of a claim, complaint, grievance or dispute in the absence of fraud or duress.

11. The Company further agrees to obtain and maintain a surety bond to insure the payment of wages and benefit contributions as required under the terms of the CBA.

12. The Company shall have the right to prepay the entire amount due under the Note prior to the date upon which payment is due without penalty and without payment of any precalculated Note interest that has not accrued as of the date full payment has been made.

The Parties hereby agree to these terms by their execution hereof on the ___23___ day of March, 2017.

DeGraf Concrete Construction, Inc.

By: _____

Title: PRESIDENT

Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and Retiree Health and Welfare Fund.

By: _____

# GUARANTY OF PAYMENT AND INDEMNIFICATION

This Guaranty ("Guaranty") is made as of MARCH 17, 2017 by the undersigned, MICHAEL PIRRON, (the "Guarantor"), to and for the benefit of the LABORERS' PENSION FUND AND THE LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY (collectively, the "Funds").

WHEREAS, DeGraf Concrete Construction, Inc. (the "Company") has agreed to pay a total of $459,631.55 to the Funds in settlement of the alleged delinquent contributions owed to the Funds and to be paid under the terms of a Settlement Agreement and Installment Note ("Note").

WHEREAS, the Funds are unwilling to enter into the Note unless the Guarantor executes this Guaranty; and

WHEREAS, the Guarantor has a financial interest in the Company and will be benefited by the Note;

NOW THEREFOREWHEREAS, in consideration of the foregoing, the Guarantor agrees as follows:

1. <u>Guaranty of Payment and Indemnification.</u> The undersigned guarantees, absolutely and unconditionally: (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the fifteen (15) month payment period including interest and liquidated damages for late or unpaid payments due on the Note; and (b) the full and complete payment of any and all fees and costs incurred pursuant to default under terms of the Note, whether litigation is involved or not, and if involved, whether at the trial or appellate levels or in pre- or post-judgment bankruptcy proceedings in enforcing or realizing upon the obligations of the Guarantor hereunder (the obligations of Guarantor under this Paragraph 1 are collectively hereinafter referred to as the "Obligations"). The Guarantor also agrees to be personally liable for all monthly benefit contributions, union dues and/or wages owed from the Company to the Funds, the District Council, all ancillary funds, and/or the participants that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs.

2. <u>Continuing Guaranty.</u> This Guaranty shall be a continuing Guaranty, and shall not be discharged, impaired or affected by; (a) the existence or continuance of any obligation on the part of the Company with respect to the Note; (b) any forbearance or extension of the time of payment of the Note; (c) the validity or invalidity of the Note; (d) any defenses whatsoever that the Company or any of the party thereto may have to the performance or observance of any term, covenant or condition contained in the Note; (e) the existence or non-existence of the Company as a legal entity; (f) any limitation or exculpation of (other than the payment and performance in full of all of the Company's Obligations) that Guarantor may have as to his undertakings, liabilities and obligations hereunder, including any defenses based upon any legal disability of the Company or any discharge or limitation of the disability of the Company, whether consensual or arising by operation of law or any bankruptcy, insolvency or debtor-relief proceeding, or from any other cause, each and every such defense being hereby waived by the Guarantor.

3. <u>Waivers.</u> Guarantor waives diligence, presentment, protest, notice of dishonor, demand for payment, extension of time of payment, notice of acceptance of this Guaranty, non-payment at maturity and indulgences and notices of every kind not provided for under this Guaranty. It is the intention of this Guaranty that Guarantor shall remain liable as principal, notwithstanding any act, omission or thing that might otherwise operate as a legal or equitable discharge of Guarantor, until all of the Company's obligations shall have been fully paid and performed.

4. <u>Subrogation.</u> Notwithstanding anything to the contrary elsewhere contained herein or in the Note, the Guarantor(s) expressly waive with respect to the Company any and all rights at law or in equity to subrogation, to reimbursement, to exoneration, to contribution, to set off or to any other rights that could accrue to a surety against a principal, to the Guarantor against a maker or obligor, to an accommodation party against the party accommodated, or to a holder or transferee against a maker, and which the guarantor may have or hereafter acquire against the Company in connection with or as a result of Guarantor's execution, delivery and/or performance of this Guaranty or the Note. The Guarantor agrees that he or she shall not have or assert any such rights against the Company or its successors and

1



assigns or any other party (including any surety), either directly or as an attempted set off to any action commenced against the Guarantor by the Company (as borrower or in any other capacity) or any other person.

5. <u>Independent Obligations.</u> The Funds may enforce this Guaranty without first resorting to or without first having recourse to the Note; provided, however, that nothing herein contained shall preclude the Funds from suing on the Note or from exercising any other rights; and the Funds shall note be required to institute or prosecute proceedings to recover any deficiency as a condition of any payment hereunder or enforcement hereof.

6. <u>Acceleration.</u> In the event that payments due under the Note shall be accelerated, the Guarantor's obligations hereunder shall also be accelerated without further notice from the Funds.

7. <u>Effect of Bankruptcy.</u> This Guaranty shall continue in full force and effect notwithstanding the institution by or against the Company of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Note in any such proceedings, or others.

8. <u>Termination.</u> This Guaranty shall remain in full force and effect as to the Guarantor until all of the Company's Obligations under the Note outstanding shall be finally and irrevocably paid in full. Payment of all of the Company's Obligations from time to time shall not operate as a discontinuance of this Guaranty. If after receipt of any payment of all or any part of the Company's Obligations, the Funds are for any reason compelled to surrender such payment to any person or entity, because such payment is determined to be void or voidable as a preference, impermissible set off, or a diversion of trust fund, or for any reason, this Guaranty shall continue in full force notwithstanding any contract action which may have been taken by the Funds in reliance upon such payment, and any such contrary action so taken shall be without prejudice to the Funds' rights under this Guaranty and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

9. <u>The Company's Financial Condition.</u> The Guarantor assumes full responsibility for keeping fully informed of the Company's financial condition and all other circumstances affecting the Company's ability to perform its Obligations, and agree that the Funds will have no duty to report to Guarantor any information which the Funds receive about the Company's financial condition or any circumstances bearing on its ability to perform.

10. <u>Expenses.</u> The undersigned agrees to pay and reimburse the Funds for all cost and attorney's fees, which they may expend or incur in the enforcement of this Guaranty or any of the Company's Obligations under the Note.

11. <u>Delay, Cumulative Remedies.</u> No delay or failure by the Funds to exercise any right to remedy against the Company or Guarantor will be construed as a waiver of that right or remedy. All remedies of the Funds against the Company and the Guarantor are cumulative.

12. <u>Binding Effect.</u> This guaranty shall incur to the benefit of and may be enforced by the Funds, and shall be binding upon and enforceable against the Guarantor and Guarantor's heirs, legal representatives, successors and assigns. In the event of the death of the Guarantor, the obligations of such deceased Guarantor shall continue in full force and effect against his estate, personal representatives, successors and assigns. Without limiting the generality of the foregoing, the Funds (or their successors and assigns) may from time to time and without notice to undersigned, assign any and all of their rights under this Guaranty without in any way affecting or diminishing the obligations of the undersigned hereunder, who shall continue to remain bound by the obligated to perform under and with respect to this Guaranty as though there had been no such assignment.

13. <u>Default.</u> The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) days notice after default in any payment due under this Guaranty, and confess judgement against Guarantor, after service of notice of the claimed default, in favor of the Funds for such amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees. The Guarantor agrees to waive and release all errors which may intervene in any such proceedings, and consent to immediate execution upon such judgement, hereby ratify and confirming all that said attorney may do by virtue hereof.

2

14. <u>Warranties.</u> Guarantor makes to the Funds the following representations and warranties:

      (a) <u>Authorization.</u> Guarantor has full right, power and authorization to enter into this Guaranty and carry out his obligations hereunder.

      (b) <u>No Conflict.</u> The execution, delivery and performance by Guarantor of this Guaranty will not violate or be in conflict with, results in a breach of, or constitute a default under, any indenture, agreement or any other instrument to which Guarantor is a party or by which Guarantor or any of his assets or properties is bound, or any order, writ, injunction or decree of any court or governmental institute.

      (c) <u>Litigation.</u> There are no actions, suits or proceedings pending, or to the knowledge of Guarantor, threatened against or adversely affecting any Guarantor at law of in equity or before or by governmental agency or instrumentality that involve any of the transactions herein contemplated, or the possibility of any judgment or liability that may result in any material and adverse change in the financial condition of any Guarantor. Guarantor is not in default with respect to any judgment, order, writ, injunction, decree, rule or regulation of any court.

      (d) <u>Enforceability.</u> This guaranty is a legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally.

15. <u>Notices.</u> All notices or other communications required or permitted hereunder shall be (a) in writing and shall be deemed to be given when either (I) delivered in person, (II) three (3) days after deposit in a regularly maintained receptacle of the United States mail as registered or Certified mail, postage prepaid, (III) when received if sent by private courier service, or (IV) on the day on which Guarantor refuses delivery by mail or by private courier service, and (b) addressed as follows:

In Case of Guarantor

  Michael Pirron
   300   Alderman Ave
   Wheeling, IL   60090

In Case of the Funds:

Collection Counsel
Ryan Liska
Laborers Pension and Welfare Fund
Sub Office
111 W Jackson Blvd Ste 1415
Chicago IL 60604-3868

or such other addresses as may from time to time be designated by the party to be addressed by notice to the other in the manner hereinabove provided.

16. <u>Additional Waivers.</u> Guarantor expressly and unconditionally waives, in connection with any suit, action or proceeding brought by the Funds on this Guaranty, any and every right he or she may have to (I) injunctive relief, (II) a trial by jury, (III) interpose any counterclaim therein and (IV) seek to have the same consolidated with any other or separate suit, action or proceeding.

17. <u>Severability.</u> If all or any portion of any provision of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty and the remaining provisions and portions hereof shall continue in full force and effect.

18. <u>Applicable Law; Venue.</u> This Guaranty and the transactions evidenced hereby shall be construed and interpreted under the laws of the State of Illinois. Guarantor, in order to induce the Funds to accept this Guaranty and enter into the loan agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, agrees that all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Guaranty shall be litigated, at the Fund's sole discretion and election, only in courts

3

having a situs within the county of Cook, State of Illinois, Eastern Division. Guarantor hereby waives any right he or she may have to transfer or change the venue of any litigation brought against him by the Funds on this agreement in accordance with this paragraph.

19. <u>Time is of the Essence.</u> Time is of the essence of this Guaranty as to the performance of the undersigned.

20. <u>Death of a Guarantor.</u> In the event of the death of Guarantor, the Funds shall have the right to accelerate the indebtedness evidenced by the Note unless, within sixty (60) days of his death, Guarantor's estate assumes his obligations hereunder by an instrument satisfactory to the Funds and delivers to the Funds security for performance of such obligations satisfactory to the Funds.

IN WITNESS WHEREOF, the three undersigned Guarantors has executed this instrument as of the date and year first above written.

Social Security Number

Date: _03·23·17_

APPROVED AS TO FORM AND SUBSTANCE
ON BEHALF OF GUARANTOR;

Dated: _03·23·17_

4

<u>INSTALLMENT NOTE</u>

This Installment Note ("Note") is made between the Laborers' Pension Fund ("Pension Fund"), the Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and the Retiree Health and Welfare Fund ("Welfare Fund" or collectively the "Funds"), the parties of the first part, and De Graf Concrete Construction, Inc. (the "Company"), the parties of the second part.

WHEREAS, the Company has at all relevant times been party to a collective bargaining agreement ("CBA") with the Construction and General Laborers' District Council of Chicago and Vicinity, whereunder it is obligated to make certain contributions to the above-named Funds, as well as to the Training Fund, on behalf of its covered employees, and to submit payment of all employee union dues;

WHEREAS, the Company has failed to timely pay certain contributions owed to the Funds for the balance of prior note covering August 2016, December 2016 through February 2017 as well as monthly contributions that become due during the pendency of the first note for the months of August through October 2017. The Parties now wish to enter into this Note arrangement covering all the aforementioned liabilities plus liquidated damages, accumulated liquidated damages, interest, attorney fees and costs that the Parties admit is due and owing.

WHEREAS, the Company has failed to remit all employee union dues to the Funds, as the designated collection agent for the Construction and General Laborers' District Council of Chicago and Vicinity, for the balance of prior note covering August 2016, December 2016 through February 2017 as well as dues contributions that become due during the pendency of the first note for the months of August through October 2017. The Parties now wish to enter into this Note arrangement covering all the aforementioned liabilities plus liquidated damages, accumulated liquidated damages, interest, attorney fees and costs that the Parties admit is due and owing.

WHEREAS, the Company desires to pay all delinquencies owed to the Funds, to pay all union dues owed to the Construction and General Laborers' District Council of Chicago and Vicinity, together with liquidated damages, and interest, as set forth below and further desires to remain current in its obligation to pay contributions to the Funds.

THE PARTIES HEREBY AGREE as follows:

1. The Company will pay $357,763.20 to the Health and Welfare Fund (comprised of $261,841.03 in delinquent contributions, $52,984.71 in liquidated damages, $968.66 in attorney's fees and costs and $41,968.80 in interest) (based on an interest rate of 12%). The Company will pay $155,448.72 to the Retiree Health and Welfare Fund (comprised of $112,938.06 in delinquent contributions, $23,353.33 in liquidated damages, $940.17 in attorney's fees and costs and $18,217.16 in interest). The Company will also pay $429,811.92 to the Pension Fund (comprised of $314,491.24 in delinquent contributions, $63,884.62 in liquidated damages, $940.17 in attorney's fees and costs and $50,495.89 in interest). All of these amounts shall be paid according to the schedule described below in paragraphs 4 and 5.

2. The Company will also pay $11,285.64 to the Training Fund (comprised of $9,234.50 in delinquent contributions, $1,846.90 in liquidated damages and $204.24 in interest), $1,719.92 to the CCA Fund (comprised of $1,532.84 in delinquent contributions, $153.28 in liquidated damages and $33.80 in interest), $1,504.93 to the LECET Fund (comprised of $1,341.24 in delinquent contributions, $134.12 in liquidated damages and $29.57 in interest), $3,654.84 to the LDCMC Fund (comprised of $3,257.29 in delinquent contributions, $325.73 in liquidated damages and $71.82 in interest) and $35,209.53 in union dues (comprised of $30,641.69 in delinquent contributions and $4,567.84 in liquidated damages). These delinquent amounts shall be paid in their entirety at the time the Note is signed along with the amounts due in paragraph 5.

3. The Company will also pay the Funds or the sum of $2,849.00 representing attorney fees and costs incurred by the Funds in Case No. 17 CV 7945. This amount is split between the Welfare, Retiree Welfare and Pension Funds as described in paragraph 1 above.

4. Simultaneously with the execution of this Note, the Company will pay $53,374.86 as the down payment due on February 1, 2018.

5. For twenty-four (24) consecutive months commencing on March 1, 2018 and ending on February 1, 2020, the Company will pay $14,906.80 per month to the Health and Welfare Fund, $6,477.03 to the Retiree Health and Welfare Fund and $17,908.83 per month to the Pension Fund.

6. The Company will remit all payments to the Funds' Administrative Offices, which are located at 11465 Cermak Road, Westchester, Illinois 60154.



EXHIBIT
D

7. The Company understands and agrees that this Installment Note is based on reports submitted by the Company to the Funds and that the Funds reserve the right to conduct an audit, in accordance with the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, to determine benefit contribution compliance for the time period covered herein and further reserve the right to collect any unpaid contributions, union dues, interest, liquidated damages, and audit costs as shown on said audit.

8. Payments made pursuant to this Installment Note shall be considered "contributions" as defined under the terms of the CBA and the Funds' respective Agreements and Declarations of Trust. If the contributions are not paid by the 10th day following the date on which payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Funds' respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages. Further, in the event the Company fails to timely make any payments described in this Note, All amounts described in paragraph 1 herein shall immediately become due on the 10th day following the date on which payment should have been received by the Fund's under the terms of this Note. In such event the Company further agrees to pay all attorneys' fees and costs incurred by the Funds in any action to enforce any part of this Note.

9. This Installment Note is conditioned on the Company staying current on its obligations to the Funds and District Council under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust. In the event that the Company fails to maintain its obligations under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, including, but not limited to, its obligations to submit timely contribution and dues reports and to make timely contribution and dues payments by the tenth day following the month in which laborers' work was performed, then the Funds shall have the right to accelerate and collect all amounts due under this Installment Note, plus payment of all attorneys' fees and costs incurred by the Funds in any action to accelerate this Installment Note.

10. The Parties acknowledge and agree that any payments to the Union provided for in this Agreement fully comport with 29 U.S.C. § 186(c)(2) and that they involve the compromise, adjustment, settlement or release of a claim, complaint, grievance or dispute in the absence of fraud or duress.

11. The Company further agrees to obtain and maintain a surety bond to insure the payment of wages and benefit contributions as required under the terms of the CBA.

12. The Company shall have the right to prepay the entire amount due under the Note prior to the date upon which payment is due without penalty and without payment of any precalculated Note interest that has not accrued as of the date full payment has been made.

The Parties hereby agree to these terms by their execution hereof on the 23rd day of the January, 2018.

De Graf Concrete Construction, Inc.

By: _____

Title: PRESIDENT

Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and Retiree Health and Welfare Fund.

By: _____

## GUARANTY OF PAYMENT AND INDEMNIFICATION

This Guaranty ("Guaranty") is made as of JANUARY 18, 2018 by the undersigned, MICHAEL PIRRON, (the "Guarantor"), to and for the benefit of the LABORERS' PENSION FUND AND THE LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY (the "District Council") and any related ancillary Funds to which De Graf Concrete Construction, Inc. is obligated to pay contributions to by virtue of its Agreement with the District Council and the Funds' respective Agreements and Declarations of Trust (collectively the "Funds").

WHEREAS, De Graf Concrete Construction (the "Company") has agreed to pay a total of $996,398.70 to the Funds in settlement of the alleged delinquent contributions owed to the Funds and to be paid under the terms of a Settlement Agreement and Installment Note ("Note").

WHEREAS, the Funds are unwilling to enter into the Note unless the guarantor executes this Guaranty; and

WHEREAS, the Guarantor has a financial interest in the Company and will be benefited by the Note;

NOW THEREFORE WHEREAS, in consideration of the foregoing, the Guarantor agrees as follows:

1. Guaranty of Payment and Indemnification. The undersigned guarantees, absolutely and unconditionally: (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the twenty-four (24) month payment period including interest and liquidated damages for late or unpaid payments due on the Note; and (b) the full and complete payment of any and all fees and costs incurred pursuant to default under terms of the Note, whether litigation is involved or not, and if involved, whether at the trial or appellate levels or in pre- or post-judgment bankruptcy proceedings in enforcing or realizing upon the obligations of the Guarantor hereunder (the obligations of Guarantor under this Paragraph 1 are collectively hereinafter referred to as the "Obligations"). The Guarantor also agrees to be personally liable for all benefit contributions, union dues and/or wages owed from the Company to the Funds, the District Council, all ancillary funds, and/or the participants that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs and including any amount revealed as due and owing in an audit even if the audit is conducted after the Note is paid in full.

2. Continuing Guaranty. This Guaranty shall be a continuing Guaranty, and shall not be discharged, impaired or affected by; (a) the existence or continuance of any obligation on the part of the Company with respect to the Note; (b) any forbearance or extension of the time of payment of the Note; (c) the validity or invalidity of the Note; (d) any defenses whatsoever that the Company or any of the party thereto may have to the performance or observance of any term, covenant or condition contained in the Note; (e) the existence or non-existence of the Company as a legal entity; (f) any limitation or exculpation of (other than the payment and performance in full of all of the Company's Obligations) that Guarantor may have as to his undertakings, liabilities and obligations hereunder, including any defenses based upon any legal disability of the Company or any discharge or limitation of the disability of the Company, whether consensual or arising by operation of law or any bankruptcy, insolvency or debtor-relief proceeding, or from any other cause, each and every such defense being hereby waived by the Guarantor.

3. Waivers. Guarantor waives diligence, presentment, protest, notice of dishonor, demand for payment, extension of time of payment, notice of acceptance of this Guaranty, non-payment at maturity and indulgences and notices of every kind not provided for under this Guaranty. It is the intention of this Guaranty that Guarantor shall remain liable as principal, notwithstanding any act, omission or thing that might otherwise operate as a legal or equitable discharge of Guarantor, until all of the Company's obligations shall have been fully paid and performed.

1



**EXHIBIT**

**E**

4. Subrogation. Notwithstanding anything to the contrary elsewhere contained herein or in the Note, the Guarantor(s) expressly waive with respect to the Company any and all rights at law or in equity to subrogation, to reimbursement, to exoneration, to contribution, to set off or to any other rights that could accrue to a surety against a principal, to the Guarantor against a maker or obligor, to an accommodation party against the party accommodated, or to a holder or transferee against a maker, and which the guarantor may have or hereafter acquire against the Company in connection with or as a result of Guarantor's execution, delivery and/or performance of this Guaranty or the Note. The Guarantor agrees that he or she shall not have or assert any such rights against the Company or its successors and assigns or any other party (including any surety), either directly or as an attempted set off to any action commenced against the Guarantor by the Company (as borrower or in any other capacity) or any other person.

5. Independent Obligations. The Funds may enforce this Guaranty without first resorting to or without first having recourse to the Note; provided, however, that nothing herein contained shall preclude the Funds from suing on the Note or from exercising any other rights; and the Funds shall note be required to institute or prosecute proceedings to recover any deficiency as a condition of any payment hereunder or enforcement hereof.

6. Acceleration. In the event that payments due under the Note shall be accelerated, the Guarantor's obligations hereunder shall also be accelerated without further notice from the Funds.

7. Effect of Bankruptcy. This Guaranty shall continue in full force and effect notwithstanding the institution by or against the Company of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Note in any such proceedings, or others.

8. Termination. This Guaranty shall remain in full force and effect as to the Guarantor until all of the Company's Obligations under the Note outstanding shall be finally and irrevocably paid in full. Payment of all of the Company's Obligations from time to time shall not operate as a discontinuance of this Guaranty. If after receipt of any payment of all or any part of the Company's Obligations, the Funds are for any reason compelled to surrender such payment to any person or entity, because such payment is determined to be void or voidable as a preference, impermissible set off, or a diversion of trust fund, or for any reason, this Guaranty shall continue in full force notwithstanding any contract action which may have been taken by the Funds in reliance upon such payment, and any such contrary action so taken shall be without prejudice to the Funds' rights under this Guaranty and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

9. The Company's Financial Condition. The guarantor assumes full responsibility for keeping fully informed of the Company's financial condition and all other circumstances affecting the Company's ability to perform its Obligations, and agree that the Funds will have no duty to report to Guarantor any information which the Funds receive about the Company's financial condition or any circumstances bearing on its ability to perform.

10. Expenses. The undersigned agrees to pay and reimburse the Funds for all cost and attorney's fees, which they may expend or incur in the enforcement of this Guaranty or any of the Company's Obligations under the Note.

11. Delay, Cumulative Remedies. No delay or failure by the Funds to exercise any right to remedy against the Company or Guarantor will be construed as a waiver of that right or remedy. All remedies of the Funds against the Company and the Guarantor are cumulative.

12. Binding Effect. This guaranty shall incur to the benefit of and may be enforced by the Funds, and shall be binding upon and enforceable against the Guarantor and Guarantor's heirs, legal representatives, successors and assigns. In the event of the death of the Guarantor, the obligations of such deceased Guarantor shall continue in full force and effect against his estate, personal representatives, successors and assigns. Without limiting the generality of the foregoing, the Funds (or their successors and assigns) may from time to time and without notice to undersigned, assign any and all of their rights under this Guaranty without in any way affecting or diminishing the obligations of the undersigned hereunder, who shall continue to remain bound by the obligated to perform under and with respect to this Guaranty as though there had been no such assignment.

2

13. <u>Default.</u> The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) days notice after default in any payment due under this Guaranty, and confess judgement against Guarantor, after service of notice of the claimed default, in favor of the Funds for such amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees. The Guarantor agrees to waive and release all errors which may intervene in any such proceedings, and consent to immediate execution upon such judgement, hereby ratify and confirming all that said attorney may do by virtue hereof.

14. <u>Warranties.</u> Guarantor makes to the Funds the following representations and warranties:

(a) <u>Authorization.</u> Guarantor has full right, power and authorization to enter into this Guaranty and carry out his obligations hereunder

(b) <u>No Conflict.</u> The execution, delivery and performance by Guarantor of this Guaranty will not violate or be in conflict with, results in a breach of, or constitute a default under, any indenture, agreement or any other instrument to which Guarantor is a party or by which Guarantor or any of his assets or properties is bound, or any order, writ, injunction or decree of any court or governmental institute.

(c) <u>Litigation.</u> There are no actions, suits or proceedings pending, or to the knowledge of Guarantor, threatened against or adversely affecting any Guarantor at law of in equity or before or by governmental agency or instrumentality that involve any of the transactions herein contemplated, or the possibility of any judgment or liability that may result in any material and adverse change in the financial condition of any Guarantor. Guarantor is not in default with respect to any judgment, order, writ, injunction, decree, rule or regulation of any court.

(d) <u>Enforceability.</u> This guaranty is a legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally.

15. <u>Notices.</u> All notices or other communications required or permitted hereunder shall be (a) in writing and shall be deemed to be given when either (I) delivered in person, (II) three (3) days after deposit in a regularly maintained receptacle of the United States mail as registered or Certified mail, postage prepaid, (III) when received if sent by private courier service, or (IV) on the day on which Guarantor refuses delivery by mail or by private courier service, and (b) addressed as follows:

In Case of Guarantor

Michael Pirron
300 Alderman Ave.
Wheeling, IL 60090

In Case of the Funds:

Collection Counsel
Ryan Liska
Laborers Pension & Welfare Fund
Sub Office
111 W Jackson Blvd
Suite 1415
Chicago IL 60604-3868

or such other addresses as may from time to time be designated by the party to be addressed by notice to the other in the manner hereinabove provided. The Funds will use their best efforts to send courtesy copies of notices provided hereunder to Guarantor. But the failure by the Funds to send courtesy copies to Guarantor's attorney shall not limit or restrict the Funds' rights under this Guaranty in any manner nor relieve Guarantor of any obligations under this guaranty.

3

16. Additional Waivers. Guarantor expressly and unconditionally waives, in connection with any suit, action or proceeding brought by the Funds on this Guaranty, any and every right he or she may have to (I) injunctive relief, (II) a trial by jury, (III) interpose any counterclaim therein and (IV) seek to have the same consolidated with any other or separate suit, action or proceeding.

17. Severability. If all or any portion of any provision of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty and the remaining provisions and portions hereof shall continue in full force and effect.

18. Applicable Law; Venue. This Guaranty and the transactions evidenced hereby shall be construed and interpreted under the laws of the State of Illinois. Guarantor, in order to induce the Funds to accept this Guaranty and inter into the loan agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, agrees that all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Guaranty shall be litigated, at the Fund's sole discretion and election, only in courts having a situs within the county of Cook, State of Illinois, Eastern Division. Guarantor hereby waives any right he or she may have to transfer or change the venue of any litigation brought against him by the Funds on this agreement in accordance with this paragraph.

19. Time is of the Essence. Time is of the essence of this Guaranty as to the performance of the undersigned.

20. Death of a Guarantor. In the event of the death of Guarantor, the Funds shall have the right to accelerate the indebtedness evidenced by the Note unless, within sixty (60) days of his death, Guarantor's estate assumes his obligations hereunder by an instrument satisfactory to the Funds and delivers to the Funds security for performance of such obligations satisfactory to the Funds.

IN WITNESS WHEREOF, the three undersigned Guarantors has executed this instrument as of the date and year first above written.

Michael C. Pirron
Print name

_____
Signature

_____
Social Security Number

Date: 01·19·18

APPROVED AS TO FORM AND SUBSTANCE
ON BEHALF OF GUARANTOR;

_____
Michael Pirron

Dated: 01·19·18

4

DEGRAF CONCRETE CONSTRUCTION, INC.
CHLAB-0718-04100
Acct # 01014
April 1, 2015 through June 30, 2018
WITHOUT SOCIAL SECURITY NUMBERS



Page 1

# Calibre CPA Group, PLLC

Reconciliation of Differences Per Year

Chicago Laborers
DeGraf Brothers Inc.
Case: CHLAB-0718-04100
Audit Period: 4/1/2015 - 6/30/2018
Fiscal Year End: May

Manager: Tim Kalnes
Auditor: Reid Karris

## CUMULATIVE

| Findings | Fiscal Year Ending: | May 2019 | May 2018 | Total |
|---|---|---|---|---|
| Dollars Not Reported | | 138,177.06 | 902,577.90 | 1,040,754.96 |
| Hours Not Reported (Funds) | | 3,195.00 | 8,422.50 | 11,617.50 |
| Hours Not Reported (Dues) | | 3,195.00 | 21,478.50 | 24,673.50 |
| | | | | |
| **Dollar Amount Due** | | | | |
| Welfare Fund | | 32,429.26 | 85,488.39 | 117,917.65 |
| Retiree Welfare Prefunding | | 15,176.26 | 37,901.25 | 53,077.51 |
| Pension Fund | | 40,161.14 | 103,765.20 | 143,926.34 |
| Training Fund | | 2,300.40 | 4,211.25 | 6,511.65 |
| CCA | | 223.66 | 1,503.53 | 1,727.19 |
| LDCLMCC | | 543.14 | 3,651.31 | 4,194.45 |
| LECET | | 255.60 | 1,718.28 | 1,973.88 |
| Dues | | 5,181.64 | 33,846.63 | 39,028.27 |
| Total | | 96,271.10 | 272,085.84 | 368,356.94 |

| | | |
|---|---|---|
| Liquidated Damages | | 83,036.83 |
| Dues Liquidated Damages | | 0.00 |
| Dues Shortages | | 0.00 |
| Audit Fee | | 1,804.56 |
| **Total Amount Due** | | **453,198.33** |

Page 2

## Calibre CPA Group, PLLC

Reconciliation of Differences Per Year

Chicago Laborers
DeGraf Brothers Inc.
Case: CHLAB-0718-04100
Audit Period: 4/1/2015 - 6/30/2018
Fiscal Year End: May

Manager: Tim Kalnes
Auditor: Reid Karris

### ALL FUNDS

| Findings | Fiscal Year Ending: | May 2019 | May 2018 | Total |
|---|---|---|---|---|
| Dollars Not Reported | | 138,177.06 | 142,417.30 | 280,594.36 |
| Hours Not Reported (Funds) | | 3,195.00 | 3,410.00 | 6,605.00 |
| Hours Not Reported (Dues) | | 3,195.00 | 3,410.00 | 6,605.00 |
| **Dollar Amount Due** | | | | |
| Welfare Fund | | 32,429.26 | 34,611.51 | 67,040.77 |
| Retiree Welfare Prefunding | | 15,176.26 | 15,345.00 | 30,521.26 |
| Pension Fund | | 40,161.14 | 42,011.20 | 82,172.34 |
| Training Fund | | 2,300.40 | 1,705.00 | 4,005.40 |
| CCA | | 223.66 | 238.71 | 462.37 |
| LDCLMCC | | 543.14 | 579.69 | 1,122.83 |
| LECET | | 255.60 | 272.80 | 528.40 |
| Dues | | 5,181.64 | 5,340.65 | 10,522.29 |
| **Total** | | 96,271.10 | 100,104.56 | 196,375.66 |

Total Amount Due | 196,375.66 |

Page 3

Local: Chicago Laborers
Contractor: DeGraf Brothers Inc.
Case: CHLAB-0718-04100

Contract: CCA / *CCA

# Calibre CPA Group, PLLC

Details Report

Source: Hours Worked

| Employee Findings | SSN | 06/2017 | 07/2017 | 08/2017 | 09/2017 | 10/2017 | 11/2017 | 12/2017 | 01/2018 | 02/2018 | 03/2018 | 04/2018 | 05/2018 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABUNDES, SAMUEL | xxx-xx-xxxx | | | | | | | | | | 133.50 | | 144.50 | 278.00 |
| CRUMP, AARON | xxx-xx-xxxx | | | | | | | | | | | | 112.00 | 112.00 |
| DE LA GARZA ERNESTO | xxx-xx-xxxx | | | | | | | | | | 225.00 | | | 225.00 |
| DUNLAVY, CHRIS J | xxx-xx-xxxx | | | | | | | | | | 138.50 | 56.00 | | 194.50 |
| GARCIA, JAVIER | xxx-xx-xxxx | | | | | | | | | | | 24.00 | | 24.00 |
| GUSSARSON, MICHAEL P | xxx-xx-xxxx | | | | | | | | | | 144.00 | | | 144.00 |
| LEON, ROBERTO | xxx-xx-xxxx | | | | | | | | | | 8.00 | 58.00 | 16.00 | 82.00 |
| LOPEZ, EDUARDO | xxx-xx-xxxx | | | | | | | | | | | | 80.00 | 80.00 |
| LOPEZ, HUGO | xxx-xx-xxxx | | | | | | | | | | | | 175.00 | 175.00 |
| MAGANA, ABRAHAM | xxx-xx-xxxx | | | | | | | | | | 190.00 | | | 190.00 |
| MARROQUIN, SANTOS | xxx-xx-xxxx | | | | | | | | | | | 129.50 | | 129.50 |
| MEZA, JULIO | xxx-xx-xxxx | | | | | | | | | | 51.50 | 68.00 | | 119.50 |
| MOYNIHAN, JOSEPH | xxx-xx-xxxx | | | | | | | | | | | 97.00 | 16.00 | 113.00 |
| NAVARRO, HUMBERTO | xxx-xx-xxxx | | | | | | | | | | | | 144.50 | 144.50 |
| NAVARRO, IGNACIO | xxx-xx-xxxx | | | | | | | | | | | | 152.00 | 152.00 |
| PINON, WILFRIDO | xxx-xx-xxxx | | | | | | | | | | | 144.00 | | 144.00 |
| PONCE, FRANCISCO | xxx-xx-xxxx | | | | | | | | | | 188.50 | 156.00 | | 344.50 |
| SAAVEDRA, DANIEL | xxx-xx-xxxx | | | | | | | | | | 85.00 | | | 85.00 |
| SALAS, RAUL | xxx-xx-xxxx | | | | | | | | | | | 136.00 | | 136.00 |
| TELLEZ, GUADALUPE | xxx-xx-xxxx | | | | | | | | | | 8.00 | 58.00 | 16.00 | 82.00 |
| VELASCO, MARTIN | xxx-xx-xxxx | | | | | | | | | | 151.00 | 152.00 | 152.50 | 455.50 |
| **Total** | | | | | | | | | | | 1323.00 | 1078.50 | 1008.50 | 3410.00 |

## Rate Table

| | Rate | | | | | | | | | | 03/2018 | 04/2018 | 05/2018 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare Fund | 10.1500 | | | | | | | | | | 13428.45 | 10946.77 | 10236.29 | 34611.51 |
| Retiree Welfare Prefunding | 4.5000 | | | | | | | | | | 5953.50 | 4853.25 | 4538.25 | 15345.00 |
| Pension Fund | 12.3200 | | | | | | | | | | 16299.36 | 13287.12 | 12424.72 | 42011.20 |
| Training Fund | 0.5000 | | | | | | | | | | 661.50 | 539.25 | 504.25 | 1705.00 |
| CCA | 0.0700 | | | | | | | | | | 92.61 | 75.49 | 70.61 | 238.71 |
| LDCLMCC | 0.1700 | | | | | | | | | | 224.91 | 183.35 | 171.43 | 579.69 |
| LECET | 0.0800 | | | | | | | | | | 105.84 | 86.28 | 80.68 | 272.80 |
| **Total** | | | | | | | | | | | 36766.17 | 29971.51 | 28026.23 | 94763.91 |

Local: Chicago Laborers
Contractor: DeGraf Brothers Inc.
Case: CHLAB-0718-04100
Contract: CCA / *CCA

# Calibre CPA Group, PLLC

Details Report

Source: Wages Paid

| Employee Findings | SSN | 06/2017 | 07/2017 | 08/2017 | 09/2017 | 10/2017 | 11/2017 | 12/2017 | 01/2018 | 02/2018 | 03/2018 | 04/2018 | 05/2018 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABUNDES, SAMUEL | xxx-xx-xxxx | | | | | | | | | | 5613.50 | | 5963.70 | 11577.20 |
| CRUMP, AARON | xxx-xx-xxxx | | | | | | | | | | | | 4614.40 | 4614.40 |
| DE LA GARZA, ERNESTO | xxx-xx-xxxx | | | | | | | | | | 9785.00 | | | 9785.00 |
| DUNLAVY, CHRIS J | xxx-xx-xxxx | | | | | | | | | | 5757.70 | 2307.20 | | 8064.90 |
| GARCIA, JAVIER | xxx-xx-xxxx | | | | | | | | | | | 988.80 | | 988.80 |
| GUSSARSON, MICHAEL P | xxx-xx-xxxx | | | | | | | | | | 6180.00 | | | 6180.00 |
| LEON, ROBERTO | xxx-xx-xxxx | | | | | | | | | | 329.60 | 2389.60 | 659.20 | 3378.40 |
| LOPEZ, EDUARDO | xxx-xx-xxxx | | | | | | | | | | | | 3460.80 | 3460.80 |
| LOPEZ, HUGO | xxx-xx-xxxx | | | | | | | | | | | | 7570.50 | 7570.50 |
| MAGANA, ABRAHAM | xxx-xx-xxxx | | | | | | | | | | 7951.60 | | | 7951.60 |
| MARROQUIN, SANTOS | xxx-xx-xxxx | | | | | | | | | | | 5448.70 | | 5448.70 |
| MEZA, JULIO | xxx-xx-xxxx | | | | | | | | | | 2193.90 | 2801.60 | | 4995.50 |
| MOYNIHAN, JOSEPH | xxx-xx-xxxx | | | | | | | | | | | 3996.40 | 659.20 | 4655.60 |
| NAVARRO, HUMBERTO | xxx-xx-xxxx | | | | | | | | | | | | 5963.70 | 5963.70 |
| NAVARRO, IGNACIO | xxx-xx-xxxx | | | | | | | | | | | | 6262.40 | 6262.40 |
| PINON, WILFRIDO | xxx-xx-xxxx | | | | | | | | | | | 5932.00 | | 5932.00 |
| PONCE, FRANCISCO | xxx-xx-xxxx | | | | | | | | | | 7766.20 | 6489.00 | | 14255.20 |
| SAAVEDRA, DANIEL | xxx-xx-xxxx | | | | | | | | | | 3522.60 | | | 3522.60 |
| SALAS, RAUL | xxx-xx-xxxx | | | | | | | | | | | 5603.20 | | 5603.20 |
| TELLEZ, GUADALUPE | xxx-xx-xxxx | | | | | | | | | | 329.60 | 2389.60 | 659.20 | 3378.40 |
| VELASCO, MARTIN | xxx-xx-xxxx | | | | | | | | | | 6272.70 | 6262.40 | 6293.30 | 18828.40 |
| Total | | | | | | | | | | | 55702.40 | 44608.50 | 42106.40 | 142417.30 |

Rate Table

| | | 06/2017 | 07/2017 | 08/2017 | 09/2017 | 10/2017 | 11/2017 | 12/2017 | 01/2018 | 02/2018 | 03/2018 | 04/2018 | 05/2018 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dues | 0.0375 | | | | | | | | | | 2088.84 | 1672.82 | 1578.99 | 5340.65 |
| Total | | | | | | | | | | | 2088.84 | 1672.82 | 1578.99 | 5340.65 |

Page 5

Local: **Chicago Laborers**
Contractor: **DeGraf Brothers Inc.**
Case: **CHLAB-0718-04100**

# Calibre CPA Group, PLLC

Details Report

Contract: CCA / *CCA

Source: Hours Worked

| Employee Findings | | 06/2018 | 07/2018 | 08/2018 | 09/2018 | 10/2018 | 11/2018 | 12/2018 | 01/2019 | 02/2019 | 03/2019 | 04/2019 | 05/2019 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABUNDES, SAMUEL | xxx-xx-xxxx | 168.00 | | | | | | | | | | | | 168.00 |
| CRUMP, AARON | xxx-xx-xxxx | 156.50 | | | | | | | | | | | | 156.50 |
| DE LA GARZA, ERNESTO | xxx-xx-xxxx | 216.00 | | | | | | | | | | | | 216.00 |
| GUSSARSON, MICHAEL P | xxx-xx-xxxx | 70.00 | | | | | | | | | | | | 70.00 |
| LOPEZ, HUGO | xxx-xx-xxxx | 216.00 | | | | | | | | | | | | 216.00 |
| MAGANA, ABRAHAM | xxx-xx-xxxx | 182.50 | | | | | | | | | | | | 182.50 |
| MARROQUIN, SANTOS | xxx-xx-xxxx | 166.00 | | | | | | | | | | | | 166.00 |
| NAVARRO, HUMBERTO | xxx-xx-xxxx | 186.00 | | | | | | | | | | | | 186.00 |
| NAVARRO, IGNACIO | xxx-xx-xxxx | 192.00 | | | | | | | | | | | | 192.00 |
| PINON, WILFRIDO | xxx-xx-xxxx | 190.00 | | | | | | | | | | | | 190.00 |
| PONCE, FRANCISCO | xxx-xx-xxxx | 194.00 | | | | | | | | | | | | 194.00 |
| REYES, MARTIN | xxx-xx-xxxx | 216.00 | | | | | | | | | | | | 216.00 |
| SAAVEDRA, DANIEL | xxx-xx-xxxx | 41.00 | | | | | | | | | | | | 41.00 |
| SAAVEDRA, DAVID | xxx-xx-xxxx | 111.00 | | | | | | | | | | | | 111.00 |
| SALAS, RAUL | xxx-xx-xxxx | 134.00 | | | | | | | | | | | | 134.00 |
| SALINAS, ALFREDO | xxx-xx-xxxx | 178.00 | | | | | | | | | | | | 178.00 |
| SANCHEZ, JORGE | xxx-xx-xxxx | 104.00 | | | | | | | | | | | | 104.00 |
| SEGURA, JOSE B | xxx-xx-xxxx | 153.00 | | | | | | | | | | | | 153.00 |
| SEGURA, OMAR | xxx-xx-xxxx | 147.00 | | | | | | | | | | | | 147.00 |
| VELASCO, MARTIN | xxx-xx-xxxx | 174.00 | | | | | | | | | | | | 174.00 |
| **Total** | | 3195.00 | | | | | | | | | | | | 3195.00 |

Rate Table

| | | 06/2018 | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare Fund | 10.1500 | 32429.26 | | | | | | | | | | | | 32429.26 |
| Retiree Welfare Prefunding | 4.7500 | 15176.26 | | | | | | | | | | | | 15176.26 |
| Pension Fund | 12.5700 | 40161.14 | | | | | | | | | | | | 40161.14 |
| Training Fund | 0.7200 | 2300.40 | | | | | | | | | | | | 2300.40 |
| CCA | 0.0700 | 223.66 | | | | | | | | | | | | 223.66 |
| LDCLMCC | 0.1700 | 543.14 | | | | | | | | | | | | 543.14 |
| LECET | 0.0800 | 255.60 | | | | | | | | | | | | 255.60 |
| **Total** | | 91089.46 | | | | | | | | | | | | 91089.46 |

Local: Chicago Laborers
Contractor: DeGraf Brothers Inc.
Case: CHLAB-0718-04100

Contract: CCA / *CCA

# Calibre CPA Group, PLLC

Page 6

## Details Report

### Source: Wages Paid

| Employee Findings | | 06/2018 | 07/2018 | 08/2018 | 09/2018 | 10/2018 | 11/2018 | 12/2018 | 01/2019 | 02/2019 | 03/2019 | 04/2019 | 05/2019 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABUNDES, SAMUEL | xxx-xx-xxxx | 7140.48 | | | | | | | | | | | | 7140.48 |
| CRUMP, AARON | xxx-xx-xxxx | 6649.20 | | | | | | | | | | | | 6649.20 |
| DE LA GARZA, ERNESTO | xxx-xx-xxxx | 9696.84 | | | | | | | | | | | | 9696.84 |
| GUSSARSON, MICHAEL P | xxx-xx-xxxx | 2956.96 | | | | | | | | | | | | 2956.96 |
| LOPEZ, HUGO | xxx-xx-xxxx | 9695.70 | | | | | | | | | | | | 9695.70 |
| MAGANA, ABRAHAM | xxx-xx-xxxx | 7802.64 | | | | | | | | | | | | 7802.64 |
| MARROQUIN, SANTOS | xxx-xx-xxxx | 7366.24 | | | | | | | | | | | | 7366.24 |
| NAVARRO, HUMBERTO | xxx-xx-xxxx | 7909.44 | | | | | | | | | | | | 7909.44 |
| NAVARRO, IGNACIO | xxx-xx-xxxx | 8165.76 | | | | | | | | | | | | 8165.76 |
| PINON, WILFRIDO | xxx-xx-xxxx | 8208.48 | | | | | | | | | | | | 8208.48 |
| PONCE, FRANCISCO | xxx-xx-xxxx | 8382.40 | | | | | | | | | | | | 8382.40 |
| REYES, MARTIN | xxx-xx-xxxx | 9696.84 | | | | | | | | | | | | 9696.84 |
| SAAVEDRA, DANIEL | xxx-xx-xxxx | 1748.56 | | | | | | | | | | | | 1748.56 |
| SAAVEDRA, DAVID | xxx-xx-xxxx | 4717.60 | | | | | | | | | | | | 4717.60 |
| SALAS, RAUL | xxx-xx-xxxx | 5691.04 | | | | | | | | | | | | 5691.04 |
| SALINAS, ALFREDO | xxx-xx-xxxx | 7610.40 | | | | | | | | | | | | 7610.40 |
| SANCHEZ, JORGE | xxx-xx-xxxx | 4406.40 | | | | | | | | | | | | 4406.40 |
| SEGURA, JOSE B | xxx-xx-xxxx | 6542.40 | | | | | | | | | | | | 6542.40 |
| SEGURA, OMAR | xxx-xx-xxxx | 6264.72 | | | | | | | | | | | | 6264.72 |
| VELASCO, MARTIN | xxx-xx-xxxx | 7524.96 | | | | | | | | | | | | 7524.96 |
| **Total** | | 138177.06 | | | | | | | | | | | | 138177.06 |

| Rate Table | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dues | 0.0375 | 5181.64 | | | | | | | | | | | | 5181.64 |
| **Total** | | 5181.64 | | | | | | | | | | | | 5181.64 |

# Calibre CPA Group, PLLC

Reconciliation of Differences Per Year

Chicago Laborers
DeGraf Brothers Inc.
Case: CHLAB-0718-04100
Audit Period: 4/1/2015 - 6/30/2018
Fiscal Year End: May

Manager: Tim Kalnes
Auditor: Reid Karris

## DUES ONLY

| Findings | Fiscal Year Ending: | May 2018 | Total |
|---|---|---|---|
| Dollars Not Reported | | 760,160.60 | 760,160.60 |
| Hours Not Reported (Dues) | | 18,068.50 | 18,068.50 |
| | | | |
| **Dollar Amount Due** | | | |
| CCA | | 1,264.82 | 1,264.82 |
| LDCLMCC | | 3,071.62 | 3,071.62 |
| LECET | | 1,445.48 | 1,445.48 |
| Dues | | 28,505.98 | 28,505.98 |
| **Total** | | 34,287.90 | 34,287.90 |

Total Amount Due          34,287.90

# Calibre CPA Group, PLLC

### Details Report

Local: Chicago Laborers
Contractor: DeGraf Brothers Inc.
Case: CHLAB-0718-04100
Contract: CCA / *CCA - Dues Only

**Source: Hours Worked**

| Employee Findings | | 06/2017 | 07/2017 | 08/2017 | 09/2017 | 10/2017 | 11/2017 | 12/2017 | 01/2018 | 02/2018 | 03/2018 | 04/2018 | 05/2018 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABUNDES, SAMUEL | xxx-xx-xxxx | | | | | | 141.00 | 190.50 | | | | 141.00 | | 472.50 |
| ALFARO, EZEQUIEL | xxx-xx-xxxx | | | | | | 159.00 | 178.00 | | | | | | 337.00 |
| ALFARO, SANTIAGO | xxx-xx-xxxx | | | | | | 134.50 | 174.00 | | | 96.50 | | | 405.00 |
| CARRASCO, ANGELICA | xxx-xx-xxxx | | | | | | 152.00 | 52.00 | | | | | | 204.00 |
| CEJA, ELIAS | xxx-xx-xxxx | | | | | | 135.00 | | | | | | | 135.00 |
| CONTRERAS, ARNULFO | xxx-xx-xxxx | | | | | | 174.00 | 196.50 | | | | | | 370.50 |
| CRUMP, AARON | xxx-xx-xxxx | | | | | | 138.00 | 138.00 | | | | | | 276.00 |
| DANIELS, DAWN | xxx-xx-xxxx | | | | | | 116.00 | 148.00 | | | | | | 264.00 |
| DE LA GARZA, ERNESTO | xxx-xx-xxxx | | | | | | 170.50 | 133.50 | | | | 178.50 | 176.50 | 659.00 |
| DUNLAVY, CHRIS J | xxx-xx-xxxx | | | | | | 32.00 | 164.00 | | | | | | 196.00 |
| GARCIA, DOMINGO | xxx-xx-xxxx | | | | | | 153.50 | 113.50 | | | | | | 267.00 |
| GARCIA, JAVIER | xxx-xx-xxxx | | | | | | 144.00 | 169.00 | | | 184.00 | | | 497.00 |
| GARCIA, MICHAEL | xxx-xx-xxxx | | | | | | 128.00 | 56.00 | | | | | | 184.00 |
| GUSSARSON, MICHAEL P | xxx-xx-xxxx | | | | | | 141.50 | 177.50 | | | | 104.00 | 146.50 | 569.50 |
| GUZMAN, TRINIDAD | xxx-xx-xxxx | | | | | | 147.50 | 99.00 | | | | | | 246.50 |
| HERNANDEZ, ELEAZAR | xxx-xx-xxxx | | | | | | 153.50 | 16.00 | | | | | | 169.50 |
| LEON, ROBERTO | xxx-xx-xxxx | | | | | | 152.00 | 112.00 | | | | | | 264.00 |
| LOPEZ, EDUARDO | xxx-xx-xxxx | | | | | | 159.50 | 179.50 | | | 207.50 | 180.00 | | 726.50 |
| LOPEZ, HUGO | xxx-xx-xxxx | | | | | | 128.00 | 156.00 | | | 201.50 | 169.50 | | 655.00 |
| MAGANA, ABRAHAM | xxx-xx-xxxx | | | | | | 161.00 | 185.00 | | | | 160.00 | 150.00 | 656.00 |
| MAGANA, JORGE | xxx-xx-xxxx | | | | | | 140.50 | 175.00 | | | 100.50 | 164.50 | 104.00 | 684.50 |
| MARROQUIN, SANTOS | xxx-xx-xxxx | | | | | | 160.00 | 163.00 | | | 153.50 | | 124.50 | 601.00 |
| MENDOZA JR, LUIS | xxx-xx-xxxx | | | | | | 136.00 | 91.00 | | | | | | 227.00 |
| MEZA, JULIO | xxx-xx-xxxx | | | | | | 162.50 | 152.00 | | | | | | 314.50 |
| MOYNIHAN, JOSEPH | xxx-xx-xxxx | | | | | | 139.00 | 172.00 | | | 169.50 | | | 480.50 |
| NAVARRO, HUMBERTO | xxx-xx-xxxx | | | | | | 144.00 | 166.00 | | | 204.00 | 157.00 | | 671.00 |
| NAVARRO, IGNACIO | xxx-xx-xxxx | | | | | | 106.00 | 168.00 | | | 200.00 | 168.00 | | 642.00 |
| PEREZ, MARIO | xxx-xx-xxxx | | | | | | 8.00 | | | | | | | 8.00 |
| PINON, WILFRIDO | xxx-xx-xxxx | | | | | | 148.00 | 190.50 | | | 208.50 | | 144.00 | 691.00 |
| PLACENCIO, ARTHUR J | xxx-xx-xxxx | | | | | | 141.00 | 24.00 | | | | | | 165.00 |
| PONCE, FRANCISCO | xxx-xx-xxxx | | | | | | 138.00 | 188.00 | | | | | 150.00 | 476.00 |
| REYES, GABRIEL | xxx-xx-xxxx | | | | | | 140.50 | 80.00 | | | | | | 220.50 |
| RODRIGUEZ-OSORNIO, JO | xxx-xx-xxxx | | | | | | 141.00 | 120.00 | | | | | | 261.00 |
| SAAVEDRA, DANIEL | xxx-xx-xxxx | | | | | | 161.00 | 170.00 | | | | 121.00 | 111.00 | 563.00 |
| SAAVEDRA, DAVID | xxx-xx-xxxx | | | | | | 161.00 | 170.00 | | | 74.50 | 130.00 | 111.00 | 646.50 |
| SALAS, RAUL | xxx-xx-xxxx | | | | | | 144.00 | 199.50 | | | 129.00 | | 128.50 | 593.00 |
| SALINAS, ALFREDO | xxx-xx-xxxx | | | | | | 146.00 | 162.00 | | | 159.50 | 152.00 | 159.00 | 778.50 |

Page 9

Local: Chicago Laborers
Contractor: DeGraf Brothers Inc.
Case: CHLAB-0718-04100

# Calibre CPA Group, PLLC

Details Report

Contract: CCA / *CCA - Dues Only

### Source: Hours Worked

| Employee Findings | | 06/2017 | 07/2017 | 08/2017 | 09/2017 | 10/2017 | 11/2017 | 12/2017 | 01/2018 | 02/2018 | 03/2018 | 04/2018 | 05/2018 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SANCHEZ, JORGE | xxx-xx-xxxx | | | | | | 148.50 | 93.00 | | | | 93.00 | 120.00 | 454.50 |
| SEGURA, JOSE B | xxx-xx-xxxx | | | | | | 109.00 | 37.00 | | | 126.00 | 112.00 | 136.50 | 520.50 |
| SEGURA, OMAR | xxx-xx-xxxx | | | | | | | 129.00 | | | 123.50 | 132.00 | 136.00 | 520.50 |
| TELLEZ, GUADALUPE | xxx-xx-xxxx | | | | | | 152.00 | 72.00 | | | | | | 224.00 |
| VEGA, NIRBARDO | xxx-xx-xxxx | | | | | | 141.00 | 109.00 | | | | | | 250.00 |
| VELASCO, MARTIN | xxx-xx-xxxx | | | | | | 150.00 | 182.50 | | | | | | 332.50 |
| WILLIAMS, ANTONIO | xxx-xx-xxxx | | | | | | 140.50 | 49.00 | | | | | | 189.50 |
| **Total** | | | | | | | 5978.00 | 5694.50 | | | 2338.00 | 2162.50 | 1895.50 | 18068.50 |

### Rate Table

| | | 06/2017 | 07/2017 | 08/2017 | 09/2017 | 10/2017 | 11/2017 | 12/2017 | 01/2018 | 02/2018 | 03/2018 | 04/2018 | 05/2018 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CCA | 0.0700 | | | | | | 418.47 | 398.61 | | | 163.65 | 151.38 | 132.71 | 1264.82 |
| LDCLMCC | 0.1700 | | | | | | 1016.25 | 988.07 | | | 397.47 | 367.62 | 322.21 | 3071.62 |
| LECET | 0.0800 | | | | | | 478.24 | 455.56 | | | 187.04 | 173.00 | 151.64 | 1445.48 |
| **Total** | | | | | | | 1912.96 | 1822.24 | | | 748.16 | 692.00 | 606.56 | 5781.92 |

# Calibre CPA Group, PLLC

**Details Report**

Local: Chicago Laborers
Contractor: DeGraf Brothers Inc.
Case: CHLAB-0718-04100
Contract: CCA / *CCA - Dues Only

### Source: Wages Paid

| Employee Findings | SSN | 06/2017 | 07/2017 | 08/2017 | 09/2017 | 10/2017 | 11/2017 | 12/2017 | 01/2018 | 02/2018 | 03/2018 | 04/2018 | 05/2018 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABUNDES, SAMUEL | xxx-xx-xxxx | | | | | | 5809.20 | 8332.70 | | | | 5809.20 | | 19951.10 |
| ALFARO, EZEQUIEL | xxx-xx-xxxx | | | | | | 6695.00 | 7498.40 | | | | | | 14193.40 |
| ALFARO, SANTIAGO | xxx-xx-xxxx | | | | | | 5572.30 | 7168.80 | | | 3975.80 | | | 16716.90 |
| CARRASCO, ANGELICA | xxx-xx-xxxx | | | | | | 6262.40 | 2142.40 | | | | | | 8404.80 |
| CEJA, ELIAS | xxx-xx-xxxx | | | | | | 5603.20 | | | | | | | 5603.20 |
| CONTRERAS, ARNULFO | xxx-xx-xxxx | | | | | | 7622.00 | 8518.10 | | | | | | 16140.10 |
| CRUMP, AARON | xxx-xx-xxxx | | | | | | 6035.80 | 6015.20 | | | | | | 12051.00 |
| DANIELS, DAWN | xxx-xx-xxxx | | | | | | 4779.20 | 6427.20 | | | | | | 11206.40 |
| DE LA GARZA, ERNESTO | xxx-xx-xxxx | | | | | | 7405.70 | 5788.60 | | | | 7735.30 | 7642.60 | 28572.20 |
| DUNLAVY, CHRIS J | xxx-xx-xxxx | | | | | | 1318.40 | 6756.80 | | | | | | 8075.20 |
| GARCIA, DOMINGO | xxx-xx-xxxx | | | | | | 6519.90 | 4830.70 | | | | | | 11350.60 |
| GARCIA, JAVIER | xxx-xx-xxxx | | | | | | 5932.80 | 6962.80 | | | 7580.80 | | | 20476.40 |
| GARCIA, MICHAEL | xxx-xx-xxxx | | | | | | 5273.60 | 2307.20 | | | | | | 7580.80 |
| GUSSARSON, MICHAEL P | xxx-xx-xxxx | | | | | | 5943.10 | 7797.10 | | | | 4284.80 | 6035.80 | 24060.80 |
| GUZMAN, TRINIDAD | xxx-xx-xxxx | | | | | | 6149.10 | 4243.60 | | | | | | 10392.70 |
| HERNANDEZ, ELEAZAR | xxx-xx-xxxx | | | | | | 6519.90 | 659.20 | | | | | | 7179.10 |
| LEON, ROBERTO | xxx-xx-xxxx | | | | | | 6262.40 | 4614.40 | | | | | | 10876.80 |
| LOPEZ, EDUARDO | xxx-xx-xxxx | | | | | | 6901.00 | 7797.10 | | | 9033.10 | 7828.00 | | 31559.20 |
| LOPEZ, HUGO | xxx-xx-xxxx | | | | | | 5273.60 | 6509.60 | | | 8476.50 | 7343.90 | | 27604.00 |
| MAGANA, ABRAHAM | xxx-xx-xxxx | | | | | | 6983.40 | 7828.00 | | | 6592.00 | 6911.30 | 6180.00 | 27683.40 |
| MAGANA, JORGE | xxx-xx-xxxx | | | | | | 5881.30 | 7374.80 | | | 4233.30 | 6911.30 | 4284.80 | 28685.50 |
| MARROQUIN, SANTOS | xxx-xx-xxxx | | | | | | 6818.60 | 6715.60 | | | 6622.90 | | 5386.90 | 25544.00 |
| MENDOZA, JR, LUIS | xxx-xx-xxxx | | | | | | 5603.20 | 3749.20 | | | | | | 9352.40 |
| MEZA, JULIO | xxx-xx-xxxx | | | | | | 6911.30 | 6427.20 | | | | | | 13338.50 |
| MOYNIHAN, JOSEPH | xxx-xx-xxxx | | | | | | 5788.60 | 7086.40 | | | 7055.50 | | | 19930.50 |
| NAVARRO, HUMBERTO | xxx-xx-xxxx | | | | | | 5932.80 | 6859.80 | | | 8487.20 | 6633.20 | | 27913.00 |
| NAVARRO, IGNACIO | xxx-xx-xxxx | | | | | | 4408.40 | 6942.20 | | | 8240.00 | 7086.40 | | 26677.00 |
| PEREZ, MARIO | xxx-xx-xxxx | | | | | | 329.60 | | | | | | | 329.60 |
| PINON, WILFRIDO | xxx-xx-xxxx | | | | | | 6138.80 | 8229.70 | | | 8858.00 | | 5932.80 | 29159.30 |
| PLACENCIO, ARTHUR J | xxx-xx-xxxx | | | | | | 5809.20 | 988.80 | | | | | | 6798.00 |
| PONCE, FRANCISCO | xxx-xx-xxxx | | | | | | 5685.60 | 7910.40 | | | | | 6190.30 | 19786.30 |
| REYES, GABRIEL | xxx-xx-xxxx | | | | | | 5943.10 | 3296.00 | | | | | | 9239.10 |
| RODRIGUEZ-OSORNIO, JO | xxx-xx-xxxx | | | | | | 5809.20 | 5294.20 | | | | | | 11103.40 |
| SAAVEDRA, DANIEL | xxx-xx-xxxx | | | | | | 6983.40 | 7333.60 | | | | 5088.20 | 4573.20 | 23978.40 |
| SAAVEDRA, DAVID | xxx-xx-xxxx | | | | | | 6983.40 | 7333.60 | | | 3120.90 | 5417.80 | 4573.20 | 27428.90 |
| SALAS, RAUL | xxx-xx-xxxx | | | | | | 5932.80 | 8353.30 | | | 5335.40 | | 5222.10 | 24843.60 |
| SALINAS, ALFREDO | xxx-xx-xxxx | | | | | | 6056.40 | 6674.40 | | | 6643.50 | 6262.40 | 6695.00 | 32231.70 |

# Calibre CPA Group, PLLC

Details Report

Local: Chicago Laborers
Contractor: DeGraf Brothers Inc.
Case: CHLAB-0718-04100

Contract: CCA / *CCA - Dues Only

Source: Wages Paid

| Employee Findings | | 06/2017 | 07/2017 | 08/2017 | 09/2017 | 10/2017 | 11/2017 | 12/2017 | 01/2018 | 02/2018 | 03/2018 | 04/2018 | 05/2018 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SANCHEZ, JORGE | xxx-xx-xxxx | | | | | | 6334.50 | 3831.60 | | | | 3831.60 | 4944.00 | 18941.70 |
| SEGURA, JOSE B | xxx-xx-xxxx | | | | | | 4490.80 | 1524.40 | | | 5314.80 | 4614.40 | 5634.10 | 21578.50 |
| SEGURA, OMAR | xxx-xx-xxxx | | | | | | | 5644.40 | | | 5160.30 | 5438.40 | 5603.20 | 21846.30 |
| TELLEZ, GUADALUPE | xxx-xx-xxxx | | | | | | 6262.40 | 2966.40 | | | | | | 9228.80 |
| VEGA, NIRBARDO | xxx-xx-xxxx | | | | | | 5809.20 | 4820.40 | | | | | | 10629.60 |
| VELASCO, MARTIN | xxx-xx-xxxx | | | | | | 6200.60 | 7735.30 | | | | | | 13935.90 |
| WILLIAMS, ANTONIO | xxx-xx-xxxx | | | | | | 5943.10 | 2039.40 | | | | | | 7982.50 |
| **Total** | | | | | | | 250916.30 | 241329.00 | | | 98138.40 | 90876.90 | 78898.00 | 760160.60 |

| Rate Table | | 06/2017 | 07/2017 | 08/2017 | 09/2017 | 10/2017 | 11/2017 | 12/2017 | 01/2018 | 02/2018 | 03/2018 | 04/2018 | 05/2018 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dues | 0.0375 | | | | | | 9409.42 | 9049.82 | | | 3680.18 | 3407.87 | 2958.69 | 28505.98 |
| **Total** | | | | | | | 9409.42 | 9049.82 | | | 3680.18 | 3407.87 | 2958.69 | 28505.98 |

Page 12

# Calibre CPA Group, PLLC

Reconciliation of Differences Per Year

Chicago Laborers
DeGraf Brothers Inc.
Case: CHLAB-0718-04100
Audit Period: 4/1/2015 - 6/30/2018     Manager:   Tim Kalnes
Fiscal Year End:  May                  Auditor:   Reid Karris

## FUNDS ONLY

| Findings | Fiscal Year Ending: | May 2018 | Total |
|---|---|---|---|
| Hours Not Reported (Funds) | | 5,012.50 | 5,012.50 |
| | | | |
| **Dollar Amount Due** | | | |
| Welfare Fund | | 50,876.88 | 50,876.88 |
| Retiree Welfare Prefunding | | 22,556.25 | 22,556.25 |
| Pension Fund | | 61,754.00 | 61,754.00 |
| Training Fund | | 2,506.25 | 2,506.25 |
| Total | | 137,693.38 | 137,693.38 |

Total Amount Due    137,693.38

# Calibre CPA Group, PLLC

## Details Report

Local: Chicago Laborers
Contractor: DeGraf Brothers Inc.
Case: CHLAB-0718-04100
Contract: CCA / *CCA - Funds Only

Page 13

### Source: Hours Worked

| Employee Findings | | 06/2017 | 07/2017 | 08/2017 | 09/2017 | 10/2017 | 11/2017 | 12/2017 | 01/2018 | 02/2018 | 03/2018 | 04/2018 | 05/2018 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABUNDES, SAMUEL | xxx-xx-xxxx | | | | | | | | | | | 117.00 | | 117.00 |
| ALFARO, SANTIAGO | xxx-xx-xxxx | | | | | | | | | | 72.50 | | | 72.50 |
| DE LA GARZA, ERNESTO | xxx-xx-xxxx | | | | | | | | | | | 97.50 | 68.50 | 166.00 |
| GARCIA, JAVIER | xxx-xx-xxxx | | | | | | | | | | 104.00 | | | 104.00 |
| GUSSARSON, MICHAEL P | xxx-xx-xxxx | | | | | | | | | | | 56.00 | 93.50 | 149.50 |
| LOPEZ, EDUARDO | xxx-xx-xxxx | | | | | | | | | | 126.50 | 171.00 | | 297.50 |
| LOPEZ, HUGO | xxx-xx-xxxx | | | | | | | | | | 193.50 | 143.50 | | 337.00 |
| MAGANA, ABRAHAM | xxx-xx-xxxx | | | | | | | | | | | 128.00 | 126.00 | 254.00 |
| MAGANA, JORGE | xxx-xx-xxxx | | | | | | | | | | 90.00 | 100.50 | 56.00 | 246.50 |
| MARROQUIN, SANTOS | xxx-xx-xxxx | | | | | | | | | | 135.50 | | 108.50 | 244.00 |
| MOYNIHAN, JOSEPH | xxx-xx-xxxx | | | | | | | | | | 145.50 | | | 145.50 |
| NAVARRO, HUMBERTO | xxx-xx-xxxx | | | | | | | | | | 188.00 | 133.00 | | 321.00 |
| NAVARRO, IGNACIO | xxx-xx-xxxx | | | | | | | | | | 184.00 | 160.00 | | 344.00 |
| PINON, WILFRIDO | xxx-xx-xxxx | | | | | | | | | | 152.50 | | 128.00 | 280.50 |
| PONCE, FRANCISCO | xxx-xx-xxxx | | | | | | | | | | | | 142.00 | 142.00 |
| SAAVEDRA, DANIEL | xxx-xx-xxxx | | | | | | | | | | | 105.00 | 79.00 | 184.00 |
| SAAVEDRA, DAVID | xxx-xx-xxxx | | | | | | | | | | 64.00 | 122.00 | 79.00 | 265.00 |
| SALAS, RAUL | xxx-xx-xxxx | | | | | | | | | | 121.00 | 86.50 | | 207.50 |
| SALINAS, ALFREDO | xxx-xx-xxxx | | | | | | | | | | 143.50 | 80.00 | 127.00 | 350.50 |
| SANCHEZ, JORGE | xxx-xx-xxxx | | | | | | | | | | | 77.00 | 80.00 | 157.00 |
| SEGURA, JOSE B | xxx-xx-xxxx | | | | | | | | | | 118.00 | 96.00 | 120.50 | 334.50 |
| SEGURA, OMAR | xxx-xx-xxxx | | | | | | | | | | 97.00 | 92.00 | 104.00 | 293.00 |
| **Total** | | | | | | | | | | | 1935.50 | 1678.50 | 1398.50 | 5012.50 |

### Rate Table

| | | | 03/2018 | 04/2018 | 05/2018 | Total |
|---|---|---|---|---|---|---|
| Welfare Fund | 10.1500 | | 19645.32 | 17036.77 | 14194.79 | 50876.88 |
| Retiree Welfare Prefunding | 4.5000 | | 8709.75 | 7553.25 | 6293.25 | 22556.25 |
| Pension Fund | 12.3200 | | 23845.36 | 20679.12 | 17229.52 | 61754.00 |
| Training Fund | 0.5000 | | 967.75 | 839.25 | 699.25 | 2506.25 |
| **Total** | | | 53168.18 | 46108.39 | 38416.81 | 137693.38 |

DEGRAF CONCRETE CONSTRUCTION, INC.
FVLAB-0718-01870
Acct #761
April 1, 2015 through June 30, 2018
WITHOUT SOCIAL SECURITY NUMBERS

EXHIBIT
G

## Calibre CPA Group, PLLC

### Summary Report

| | |
|---|---|
| Local: **Fox Valley Laborers** | Manager: **Tim Kalnes** |
| Contractor: **DeGraf Brothers Inc.** | Auditor: **Reid Karris** |
| Case: **FVLAB-0718-01870** | Audit Period: **4/1/2015 - 6/30/2018** |

Contract: **8021 - Building Contract**

| Fund | Year Begins | Amount |
|---|---|---|
| **Welfare Fund** | 01/2017 | $7,635.47 |
| | 01/2018 | $9,342.94 |
| | **Total** | **$16,978.41** |
| **Pension Fund** | 01/2017 | $7,319.40 |
| | 01/2018 | $8,956.20 |
| | **Total** | **$16,275.60** |
| **Training/Apprentice Fund** | 01/2017 | $277.25 |
| | 01/2018 | $339.25 |
| | **Total** | **$616.50** |
| **CCA** | 01/2017 | $45.56 |
| | 01/2018 | $41.27 |
| | **Total** | **$86.83** |
| **LDCLMCC** | 01/2017 | $110.68 |
| | 01/2018 | $100.21 |
| | **Total** | **$210.89** |
| **LECET** | 01/2017 | $52.08 |
| | 01/2018 | $47.16 |
| | **Total** | **$99.24** |
| **Dues** | 01/2017 | $1,068.37 |
| | 01/2018 | $960.22 |
| | **Total** | **$2,028.59** |
| **Total** | 01/2017 | $16,508.81 |
| | 01/2018 | $19,787.25 |
| | **Total** | **$36,296.06** |

Received by Fox Valley Laborers 08/27/2018

## Calibre CPA Group, PLLC

Local: Fox Valley Laborers
Contractor: DeGraf Brothers Inc.
Case: FVLAB-0718-01870

**Details Report**

Findings Source: Hours Worked (Funds)

Contract: 8021 - Building Contract

### Employee Findings

| | | 01/2017 | 02/2017 | 03/2017 | 04/2017 | 05/2017 | 06/2017 | 07/2017 | 08/2017 | 09/2017 | 10/2017 | 11/2017 | 12/2017 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PEREZ, MARIO | xxx-xx-xxxx | | | | | | | | | | 111.00 | 156.00 | | 287.00 |
| REYES, MARTIN | xxx-xx-xxxx | | | | | | | | | | | 171.50 | 116.00 | 287.50 |
| Total | | | | | | | | | | | 111.00 | 327.50 | 116.00 | 554.50 |

### Fund Contributions Summary

| | 01/2017 | 02/2017 | 03/2017 | 04/2017 | 05/2017 | 06/2017 | 07/2017 | 08/2017 | 09/2017 | 10/2017 | 11/2017 | 12/2017 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare Fund | | | | | | | | | | 1528.47 | 4509.68 | 1597.32 | 7635.47 |
| Pension Fund | | | | | | | | | | 1465.20 | 4323.00 | 1531.20 | 7319.40 |
| Training/Apprentice Fund | | | | | | | | | | 55.50 | 163.75 | 58.00 | 277.25 |
| Total | | | | | | | | | | 3049.17 | 8996.43 | 3186.52 | 15232.12 |

### Fund Contribution Rates

| | 01/2017 | 02/2017 | 03/2017 | 04/2017 | 05/2017 | 06/2017 | 07/2017 | 08/2017 | 09/2017 | 10/2017 | 11/2017 | 12/2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare Fund | 13.5200 | 13.5200 | 13.5200 | 13.5200 | 13.5200 | 13.7700 | 13.7700 | 13.7700 | 13.7700 | 13.7700 | 13.7700 | 13.7700 |
| Pension Fund | 12.2800 | 12.2800 | 12.2800 | 12.2800 | 12.2800 | 13.2000 | 13.2000 | 13.2000 | 13.2000 | 13.2000 | 13.2000 | 13.2000 |
| Training/Apprentice Fund | 0.5000 | 0.5000 | 0.5000 | 0.5000 | 0.5000 | 0.5000 | 0.5000 | 0.5000 | 0.5000 | 0.5000 | 0.5000 | 0.5000 |
| Total | 26.3000 | 26.3000 | 26.3000 | 26.3000 | 26.3000 | 27.4700 | 27.4700 | 27.4700 | 27.4700 | 27.4700 | 27.4700 | 27.4700 |

Received by Fox Valley Laborers 08/27/2018

# Calibre CPA Group, PLLC

## Details Report

Local: **Fox Valley Laborers**
Contractor: **DeGraf Brothers Inc.**
Case: **FVLAB-0718-01870**

Findings Source: **Hours Worked (Dues)**

| Contract: 8021 - Building Contract | 01/2017 | 02/2017 | 03/2017 | 04/2017 | 05/2017 | 06/2017 | 07/2017 | 08/2017 | 09/2017 | 10/2017 | 11/2017 | 12/2017 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

### Employee Findings

| | 01/2017 | 02/2017 | 03/2017 | 04/2017 | 05/2017 | 06/2017 | 07/2017 | 08/2017 | 09/2017 | 10/2017 | 11/2017 | 12/2017 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PEREZ, MARIO  xxx-xx-xxxx | | | | | | | | | | | 156.00 | 121.50 | 277.50 |
| REYES, MARTIN  xxx-xx-xxxx | | | | | | | | | | | 171.50 | 202.00 | 373.50 |
| **Total** | | | | | | | | | | | 327.50 | 323.50 | 651.00 |

### Fund Contributions Summary

| | 01/2017 | 02/2017 | 03/2017 | 04/2017 | 05/2017 | 06/2017 | 07/2017 | 08/2017 | 09/2017 | 10/2017 | 11/2017 | 12/2017 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CCA | | | | | | | | | | | 22.92 | 22.64 | 45.56 |
| LDCLMCC | | | | | | | | | | | 55.68 | 55.00 | 110.68 |
| LECET | | | | | | | | | | | 26.20 | 25.88 | 52.08 |
| **Total** | | | | | | | | | | | 104.80 | 103.52 | 208.32 |

### Fund Contribution Rates

| | 01/2017 | 02/2017 | 03/2017 | 04/2017 | 05/2017 | 06/2017 | 07/2017 | 08/2017 | 09/2017 | 10/2017 | 11/2017 | 12/2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CCA | 0.0700 | 0.0700 | 0.0700 | 0.0700 | 0.0700 | 0.0700 | 0.0700 | 0.0700 | 0.0700 | 0.0700 | 0.0700 | 0.0700 |
| LDCLMCC | 0.1700 | 0.1700 | 0.1700 | 0.1700 | 0.1700 | 0.1700 | 0.1700 | 0.1700 | 0.1700 | 0.1700 | 0.1700 | 0.1700 |
| LECET | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 |
| **Total** | 0.3200 | 0.3200 | 0.3200 | 0.3200 | 0.3200 | 0.3200 | 0.3200 | 0.3200 | 0.3200 | 0.3200 | 0.3200 | 0.3200 |

Received by Fox Valley Laborers 08/27/2018

# Calibre CPA Group, PLLC

## Details Report

Findings Source: Wages Paid

Local: Fox Valley Laborers
Contractor: DeGraf Brothers Inc.
Case: FVLAB-0718-01870

Contract: 8021 - Building Contract

### Employee Findings

| | | 01/2017 | 02/2017 | 03/2017 | 04/2017 | 05/2017 | 06/2017 | 07/2017 | 08/2017 | 09/2017 | 10/2017 | 11/2017 | 12/2017 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PEREZ, MARIO | xxx-xx-xxxx | | | | | | | | | | | 6839.20 | 5325.10 | 12164.30 |
| REYES, MARTIN | xxx-xx-xxxx | | | | | | | | | | | 7467.50 | 8858.00 | 16325.50 |
| Total | | | | | | | | | | | | 14306.70 | 14183.10 | 28489.80 |

### Fund Contributions Summary

| | 01/2017 | 02/2017 | 03/2017 | 04/2017 | 05/2017 | 06/2017 | 07/2017 | 08/2017 | 09/2017 | 10/2017 | 11/2017 | 12/2017 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dues | | | | | | | | | | | 536.50 | 531.87 | 1068.37 |
| Total | | | | | | | | | | | 536.50 | 531.87 | 1068.37 |

### Fund Contribution Rates

| | 01/2017 | 02/2017 | 03/2017 | 04/2017 | 05/2017 | 06/2017 | 07/2017 | 08/2017 | 09/2017 | 10/2017 | 11/2017 | 12/2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dues | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% |
| Total | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% |

Received by Fox Valley Laborers 08/27/2018

# Calibre CPA Group, PLLC

## Details Report

Local: **Fox Valley Laborers**
Contractor: **DeGraf Brothers Inc.**
Case: **FVLAB-0718-01870**

Contract: **8021 - Building Contract**

Findings Source: **Hours Worked (Funds)**

### Employee Findings

| | | 01/2018 | 02/2018 | 03/2018 | 04/2018 | 05/2018 | 06/2018 | 07/2018 | 08/2018 | 09/2018 | 10/2018 | 11/2018 | 12/2018 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PEREZ, MARIO | xxx-xx-xxxx | | | | | 8.00 | | | | | | | | 8.00 |
| REYES, MARTIN | xxx-xx-xxxx | | 107.00 | 224.50 | 170.00 | 169.00 | | | | | | | | 670.50 |
| **Total** | | | 107.00 | 224.50 | 170.00 | 177.00 | | | | | | | | 678.50 |

### Fund Contributions Summary

| | 01/2018 | 02/2018 | 03/2018 | 04/2018 | 05/2018 | 06/2018 | 07/2018 | 08/2018 | 09/2018 | 10/2018 | 11/2018 | 12/2018 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare Fund | | 1473.39 | 3091.36 | 2340.90 | 2437.29 | | | | | | | | 9342.94 |
| Pension Fund | | 1412.40 | 2963.40 | 2244.00 | 2336.40 | | | | | | | | 8956.20 |
| Training/Apprentice Fund | | 53.50 | 112.25 | 85.00 | 88.50 | | | | | | | | 339.25 |
| **Total** | | 2939.29 | 6167.01 | 4669.90 | 4862.19 | | | | | | | | 18638.39 |

### Fund Contribution Rates

| | 01/2018 | 02/2018 | 03/2018 | 04/2018 | 05/2018 | 06/2018 | 07/2018 | 08/2018 | 09/2018 | 10/2018 | 11/2018 | 12/2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare Fund | 13.7700 | 13.7700 | 13.7700 | 13.7700 | 13.7700 | 13.7700 | 13.7700 | 13.7700 | 13.7700 | 13.7700 | 13.7700 | 13.7700 |
| Pension Fund | 13.2000 | 13.2000 | 13.2000 | 13.2000 | 13.2000 | 13.7000 | 13.7000 | 13.7000 | 13.7000 | 13.7000 | 13.7000 | 13.7000 |
| Training/Apprentice Fund | 0.5000 | 0.5000 | 0.5000 | 0.5000 | 0.5000 | 0.7200 | 0.7200 | 0.7200 | 0.7200 | 0.7200 | 0.7200 | 0.7200 |
| Total | 27.4700 | 27.4700 | 27.4700 | 27.4700 | 27.4700 | 28.1900 | 28.1900 | 28.1900 | 28.1900 | 28.1900 | 28.1900 | 28.1900 |

Received by Fox Valley Laborers 08/27/2018

Local: Fox Valley Laborers
Contractor: DeGraf Brothers Inc.
Case: FVLAB-0718-01670

# Calibre CPA Group, PLLC

## Details Report

Findings Source: Hours Worked (Dues)

Contract: 8021 - Building Contract

### Employee Findings

| | | 01/2018 | 02/2018 | 03/2018 | 04/2018 | 05/2018 | 06/2018 | 07/2018 | 08/2018 | 09/2018 | 10/2018 | 11/2018 | 12/2018 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PEREZ, MARIO | xxx-xx-xxxx | | | | | 8.00 | | | | | | | | 8.00 |
| REYES, MARTIN | xxx-xx-xxxx | | | 224.50 | 179.00 | 178.00 | | | | | | | | 581.50 |
| Total | | | | 224.50 | 179.00 | 186.00 | | | | | | | | 589.50 |

### Fund Contributions Summary

| | 01/2018 | 02/2018 | 03/2018 | 04/2018 | 05/2018 | 06/2018 | 07/2018 | 08/2018 | 09/2018 | 10/2018 | 11/2018 | 12/2018 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CCA | | | 15.72 | 12.53 | 13.02 | | | | | | | | 41.27 |
| LDCLMCC | | | 38.16 | 30.43 | 31.62 | | | | | | | | 100.21 |
| LECET | | | 17.96 | 14.32 | 14.88 | | | | | | | | 47.16 |
| Total | | | 71.84 | 57.28 | 59.52 | | | | | | | | 188.64 |

### Fund Contribution Rates

| | 01/2018 | 02/2018 | 03/2018 | 04/2018 | 05/2018 | 06/2018 | 07/2018 | 08/2018 | 09/2018 | 10/2018 | 11/2018 | 12/2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CCA | 0.0700 | 0.0700 | 0.0700 | 0.0700 | 0.0700 | 0.0700 | 0.0700 | 0.0700 | 0.0700 | 0.0700 | 0.0700 | 0.0700 |
| LDCLMCC | 0.1700 | 0.1700 | 0.1700 | 0.1700 | 0.1700 | 0.1700 | 0.1700 | 0.1700 | 0.1700 | 0.1700 | 0.1700 | 0.1700 |
| LECET | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0900 | 0.0800 | 0.0800 | 0.0800 | 0.0800 | 0.0800 |
| Total | 0.3200 | 0.3200 | 0.3200 | 0.3200 | 0.3200 | 0.3200 | 0.3200 | 0.3200 | 0.3200 | 0.3200 | 0.3200 | 0.3200 |

Received by Fox Valley Laborers 08/27/2018

Local: Fox Valley Laborers
Contractor: DeGraf Brothers Inc.
Case: FVLAB-0718-01870

## Calibre CPA Group, PLLC

### Details Report

Findings Source: Wages Paid

Contract: 8021 - Building Contract

| | 01/2018 | 02/2018 | 03/2018 | 04/2018 | 05/2018 | 06/2018 | 07/2018 | 08/2018 | 09/2018 | 10/2018 | 11/2018 | 12/2018 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Employee Findings** | | | | | | | | | | | | | |
| PEREZ, MARIO xxx-xx-xxxx | | | | | 329.60 | | | | | | | | 329.60 |
| REYES, MARTIN xxx-xx-xxxx | | | 9754.10 | 7786.20 | 7755.90 | | | | | | | | 25276.20 |
| Total | | | 9754.10 | 7766.20 | 8085.50 | | | | | | | | 25605.80 |
| **Fund Contributions Summary** | | | | | | | | | | | | | |
| Dues | | | 365.78 | 291.23 | 303.21 | | | | | | | | 960.22 |
| Total | | | 365.78 | 291.23 | 303.21 | | | | | | | | 960.22 |
| **Fund Contribution Rates** | | | | | | | | | | | | | |
| Dues | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | |
| Total | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | 3.7500% | |

Received by Fox Valley Laborers 08/27/2018